## PRODUCERS OIL COMPANY *v.* HANZEN.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 165.   Submitted March 3, 1915.—Decided June 14, 1915.

The effect of riparian rights, attached to land conveyed by patent of the United States, depends upon the local law.

As a general rule, meanders are not to be treated as boundaries and when the United States conveys a tract of land by patent referring to an official survey which shows the same bordering on a navigable river, the purchaser takes title up to the water line.

Where the facts and circumstances, however, affirmatively disclose an intention to limit the grant to actual traverse lines, these must be treated as definite boundaries; and a patent to a fractional section does not necessarily confer riparian rights because of the presence of meanders.

Where, as in this case, the survey of improved lands was made at the express request of the occupant to whom they were subsequently patented, and the grant specified the number of acres, and other circumstances also indicated that only the lands conveyed were those within the traverse lines, the patent of the United States conferred no riparian rights but simply conveyed the specified number of acres.

In a controversy between individuals as to the extent of the land conveyed by a patent of the United States, and to which the United States is not a party, nothing in the opinion or judgment should be taken to prejudice or impair any of the rights of the United States in the lands affected.

61 So. Rep. 754, affirmed.

THE facts, which involve the title to property conveyed by a United States patent and the construction of such patent and the amount of land conveyed thereby, are stated in the opinion.

*Mr. Edgar H. Farrar* for plaintiff in error:

The action is possessory, and no question of title is involved, or can be decided, because not in issue.

Actual possession of part of an estate, with title to the whole, is possession of the whole, and gives the holder of the title the right to maintain a possessory action as

to the part not actually occupied or physically possessed. *Sallier* v. *Bartlett,* 113 Louisiana, 400; *Jones* v. *Gossett,* 115 Louisiana, 926; *Leonard* v. *Garrett,* 128 Louisiana, 542.

In an action to protect constructive possession of part of an estate not in actual possession, titles are averred and put in issue solely to show the nature and extent of possession. *Mott* v. *Hopper,* 116 Louisiana, 629.

The mining laws of the United States do not grant the right to search for minerals in lands which are the property of individuals, nor authorize any disturbance of the title or possession of such lands. *Del Monte Mining Co.* v. *Last Chance Co.,* 171 U. S. 55.

Defendants, not having discovered any oil on the lands seized by them, and posted and surveyed as a mining claim, before doing such acts, got no rights of possession or any other rights under the mining laws of the United States as against the constructive possession of such lands by plaintiff. Discovery must precede location. Rev. Stat., § 2320; *Enterprise Co.* v. *Rico-Aspen Co.,* 167 U. S. 168; *Calhoun Mining Co.* v. *Ajax Co.,* 182 U. S. 499; *Mining Co.* v. *Tunnel Co.,* 196 U. S. 337.

Discovery of oil after this suit was brought, and after the land was seized under a writ of sequestration, and released by the defendants on bond, does not relieve them from being trespassers; their rights must be determined as of the time when they invaded the premises.

Defendants, being mere trespassers on lands *prima facie* conveyed to the plaintiff, and covered by the patent and plat of the United States to plaintiff's vendors, and at the time of the trespass in the constructive possession of the plaintiff, cannot be heard to contest the plaintiff's claim to the property under the patent of the United States or the survey and plat on which the patent is based. *Bonis* v. *James,* 7 Rob. La. Reports, 149; *Stephenson* v. *Goff,* 10 Rob. 99; *Whitaker* v. *McBride,* 197 U. S. 510.

The patent to plaintiff's vendor, being based on a plat

showing a meander or traverse line all around the border of the bounding stream, drawn in accordance with the field notes, and showing no surveyed land between the meander line and the water's edge, conveys to the grantee any land actually existing between the meander line and the water line. *Railroad Co.* v. *Schurmeir,* 7 Wall. 272; *Mitchel* v. *Smale,* 140 U. S. 406, 414; *Hardin* v. *Jordan,* 140 U. S. 371; *Horne* v. *Smith,* 159 U. S. 40; *Whitaker* v. *McBride,* 197 U. S. 510; *Forsyth* v. *Smale,* 7 Biss. 201; *S. C.,* Fed. Cas. No. 4950; *Grand Rapids & Ind. R. R.* v. *Butler,* 159 U. S. 87; *United States* v. *Chandler-Dunbar Co.,* 209 U. S. 447.

Grants of the United States for lands bounded on streams and other waters, without any reservation or restriction of terms, are to be construed, as to their effect, according to the law of the State in which the lands lie. *Hardin* v. *Jordan, supra; Whitaker* v. *McBride, supra.*

If the Federal grant is, by its terms, riparian, then the local law determines the rights of the riparian grantee.

The action of the state court in ignoring the official plat on which plaintiff's patent was based, and the meander line delineated on that plat, was purely arbitrary.

The intent of the United States Government is paramount; if that intent was to make the line delineated a meander and not a boundary line, it must be so held.

Official patents and surveys of the United States cannot be attacked collaterally, or in litigations between private persons. *Stoneroad* v. *Stoneroad,* 158 U. S. 240; *Russell* v. *Maxwell Land Grant Co.,* 158 U. S. 253; *Horne* v. *Smith,* 159 U. S. 40; *Whitaker* v. *McBride,* 197 U. S. 510.

*Mr. David T. Watson* and *Mr. Eugene Mackey* for defendant in error:

A Government patent is construed against the grantee.

The patent shows no intent to convey the land in controversy. The Bristol survey was made at the request of the patentee and was a survey of his improvements.

He and his successors never took possession of the land. The Bristol survey line was not in fact a meander line. The words "spur of marsh extend out north" exclude this land. The omission of three hundred acres to the south shows that the Bristol survey line was not a meander line.

Calling it a meander in Bristol's notes is not controlling. The Government plat is not conclusive.

Whether defendant could question plaintiff's title in a possessory action under the Louisiana practice is not a Federal question. The writ of error does not present the question of defendant in error's title under the mining laws.

Under the mining laws defendant in error's title is valid.

The alleged removal of a raft in the Red River was not proved and presents no Federal question.

In support of these contentions, see *Adkins v. Arnold*, 235 U. S. 417; *Barnhart v. Ehrhart*, 33 Oregon, 274; *Barringer v. Adams*, 141 Iowa, 419; *Bissell v. Fletcher*, 19 Nebraska, 725; *Bonis v. James*, 7 Rob. (La.) 149; *Buena Vista County v. Iowa Falls &c. Co.*, 112 U. S. 165; *Chapman v. Bigelow*, 206 U. S. 41; *Chapman v. St. Francis*, 232 U. S. 186; *Chrisman v. Miller*, 197 U. S. 313; *Cosmos Exploration Co. v. Gray Eagle Oil Co.*, 112 Fed. Rep. 4; *Crossman v. Pendery*, 8 Fed. Rep. 693; *French-Glenn Co. v. Springer*, 185 U. S. 47; *Fuller v. Shedd*, 161 Illinois, 462; *Fulton v. Frandolig*, 63 Texas, 330; *Glenn v. Jeffrey*, 75 Iowa, 20; *Graham v. Gill*, 223 U. S. 643; *Granger v. Swart*, 1 Woolw. 88; *S. C.*, Fed. Cas. No. 5685; *Grant v. Hemphill*, 92 Iowa, 218; *Hale v. Gaines*, 22 How. 144; *Hardin v. Jordan*, 140 U. S. 371; *James v. Howard*, 41 Ohio, 696; *Lamars v. Nissen*, 4 Nebraska, 245; *Little v. McPherson*, 35 Oregon, 51; *McLenemore v. Express Oil Co.*, 158 California, 551; *Miller v. Chrisman*, 140 California, 440; *Mining Co. v. Tunnel Co.*, 196 U. S. 337; *Mitchell v. Smale*, 140 U. S. 406; *Niles v. Cedar Point Club*, 175 U. S. 300; *Railroad Co. v. Schurmeir*, 7 Wall. 272; *Schlosser v. Hemphill*, 118 Iowa, 452; *Scott v. Lattig*,

227 U. S. 229; *Security Land Co.* v. *Burns,* 193 U. S. 167; *Shively,* v. *Bowlby,* 152 U. S. 1; *Shoemaker* v. *Hatch,* 13 Illinois, 261; *United States* v. *Arredondo,* 6 Pet. 691; *Whitaker* v. *McBride,* 197 U. S. 510; *Wright* v. *Mattison,* 18 How. 50; *Yazoo Ry.* v. *Adams,* 180 U. S. 1.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

Plaintiff in error—The Oil Company—instituted this action July 1, 1910, in the District Court, Caddo Parish, Louisiana, for the purpose of establishing its right to possession of part of Lot No. 1, Section 4, Township 20, North, Range 16, West, suddenly become very valuable through discovery of gas and oil. The petition alleges that the United States in 1874 sold to one Pitts Lots 1 and 2, Section 4, forming a projection known as "Wilson's Point," surrounded on three sides by waters of James Bayou, a navigable stream; that he immediately entered and together with his successors remained in peaceful, complete possession until April 2, 1910, when defendants in error, without knowledge of Noel, then owner, wrongfully entered upon part of Lot No. 1, built a wire fence and placed a keeper thereon; that April 15, 1910, by notarial act duly recorded, the Oil Company purchased both lots from Noel and became subrogated to his rights; and when it came to subject the whole property to actual possession a portion was found occupied as above indicated.

A writ of sequestration, issued contemporaneously with filing of petition, was subsequently dissolved upon motion, a proper bond having been given conditioned not to commit waste and to make faithful restitution of fruits if so required.

Answering, defendants in error denied they were occupying any part of Lot No. 1, Section 4, but said they were and had been since April 2, 1910, in possession of 87.9 acres situated in Sections 3 and 4, Township 20, described by metes

and bounds, "which said property your respondents lo-
cated under the laws of the United States relative to the lo-
cation of mining lands and upon which they have made a
discovery of oil and gas, and are, therefore, entitled to the
full use and enjoyment and to a patent from the United
States." They also denied the Oil Company or any of "its
ancestors in title ever had or claimed possession to any part
of the property so located by your respondents; but, that,
on the contrary, your respondents aver that the said land
was never in the possession of any person until the location
by them." Further answering they averred that "Thomas
H. Pitts purchased from the United States, among other
property, Lot One of Section Four, Township Twenty
North of Range Sixteen West, containing 12.84 acres and
that he paid for the same with military land warrants,
as containing that acreage; that the said Lot One of Sec-
tion Four is figured and described on the surveys of the
United States by certain metes and bounds, shown on the
said plat, the eastern boundary of said lot, as well as the
other boundaries thereof, being shown on the said map;
that the East line of said lot which is the boundary be-
tween the land of respondents and that of plaintiff, did
not and does not denote the banks of any body of water,
but that, on the contrary, the said line was run through
the hills as the line of boundary of the said lot; that the
land of which your respondents are in possession and which
they located under their mineral filing aforesaid, is high
land, not subject to overflow at any time, and which never
constituted any part of any lake or bayou and which was
left out of the surveys of the United States and which
remained the property of the Government until said loca-
tion had been made thereon by your respondent."

There were introduced in evidence patents from the
Government, field notes and attending documents, official
plat, sundry conveyances, contour maps—one prepared
by Williams for plaintiff company, another by Barnes for

defendants,—Barbour's survey of Sections 9, 10, 15 and 16, and photographs showing landscape and vegetation. Witnesses were examined in behalf of both sides chiefly in explanation of lines, maps, water levels, character of land and growth thereon. A draft of the official plat (5/6 original size) is in the margin; on the following page is a copy of the combination map (much reduced) showing the Bristol, Williams, Barnes, and Barbour surveys especially referred to by the Louisiana Supreme Court. At the trial the following stipulation was made part of the record:

"It is admitted by both parties that J. S. Noel was in possession, as owner, from the date of his purchase in 1880 [1884], to the sale to the plaintiffs of the property known as the Wilson's Point place, his corporeal possession being limited on the East and North by the Bristol meander line, and said Noel never exercised any acts of corporeal possession, or was ever in occupancy of any land in Section Four, East of, or outside of the said meander line, or of any of the land in controversy. This is not intended to apply to any other land West of the land in controversy. That Noel's possession was vested by act of purchase and continued by occupancy in the Plaintiffs.

"It is further admitted that defendants on the second day of April, 1910, took actual possession of, and posted and filed notices of location under the placer mining laws of the United States, of the tract of land on which they are now in possession, and concerning which this suit is brought, which tract of land is described by metes and bounds in defendants' answer.

"It is further admitted that when defendants took possession of said land, they located the western boundary line of their location, as the Bristol meander line, as properly located, and the defendant does not claim the ownership or possession of any land west of the true location of said Bristol meander line.

"It is admitted that since the institution of this suit

| TABLE OF TRAVERSE. | | | | | | | |
|---|---|---|---|---|---|---|---|
| *In front of Sec. 4.* | | *N. 39½ W.* | 3.00 | *S. 24° W.* | 4.00 | *S. 76° E.* | 10.00 |
| *N. 2° E.* | 6.00 | *N. 31½ W.* | 3.50 | *South* | 3.00 | *N. 30 E.* | 11.00 |
| *N. 15° W.* | 3.00 | *S. 84° W.* | 6.00 | *S. 31° E.* | 4.00 | *In front of Sec. 10* | |
| *\*N. 4½ E.* | 2.50 | *S. 13° W.* | 1.50 | *S. 51° E.* | 11.00 | *N. 30° E.* | 9.50 |
| *N. 16° W.* | 2.50 | *N. 83° W.* | 3.00 | *S. 65° E.* | 5.00 | *N. 78° E.* | 30.00 |
| *S. 86½ W.* | 2.50 | *S. 39 W.* | 2.00 | *S. 36 E.* | 4.00 | *N. 43° W.* | 20.00 |
| *S. 57° W.* | 4.50 | *S. 8° E.* | 4.50 | *S. 3° E.* | 5.00 | *N. 20° E.* | 10.00 |
| *S. 35¼ W.* | 4.50 | *S. 50° E.* | 3.50 | *S. 11° W.* | 3.00 | | |
| *S. 63° W.* | 4.50 | *In front of Sec. 9.* | | *S. 24½ E.* | 9.00 | | |
| *N. 81° W.* | 2.80 | *S. 28½ E.* | 10.00 | *N. 88½ E.* | 11.00 | | |

## CONTENTS:

Sec. 4.... 24.28 Acs     Sec. 9... 179.60 Acs     Sec. 10... 76.24 Acs

*\* See field notes N. 47½ E*

the defendants have actually discovered oil and gas and are now producing oil from said property.

"It is admitted by both parties, that the land in controversy is high land and was high land at the date that Bristol made his survey in 1871.

"There being a dispute between the Plaintiff and Defendants as to the true location of the Bristol meander line referred to above, it is agreed that the said issue as to the true and exact location of said line is not to be passed upon in this case, said issue being relegated to a subsequent proceeding herein, should the Court sustain the defendants' position that said line is the true boundary between the property, and the question of costs and damages are likewise relegated to further proceedings."

Prior to 1858 Alfred Wilson squatted on the point since known by his name and during that year sold to Ann Pitts improvements upon "160 acres more or less" lying thereon. In April, 1871, Thomas H. Pitts applied to the United States for a survey of the land—long improved and then occupied—and shortly thereafter (July, 1871) this was made by Byron Bradley Bristol, duly certified and reported as "Field Notes of the Survey of Wilson's Point." From these notes, referring among other things to enclosure, corn field, fence, dwelling and road, the official plat or diagram was made in the office of the Surveyor-General of Louisiana with actual traverse lines marked out. This plat shows fractional Section 4, immediately north of Section 9—divided into two lots, No. 1 on the east, 12.84 acres, and No. 2 west, 11.44 acres—on a point upon the left bank and surrounded on three sides by waters of James Bayou. It is very small and does not indicate with certainty whether traverse lines or the stream constitute north and east boundaries. In respect of this fractional Section 4 the surveyor's field notes in part recite: "July 27th, 1871. Meanders of the left Bank of James Bayou begin at the corner between fractional sections 9 and 4 [southeast corner of Lot No. 1, Section 4], a gum tree at 24.50 West of the corner of sections 3, 4, 9 and 10; run thence down stream in fractional sec. 4; N. 2 degrees E. 6.00; N. 15 degrees W. 3.00; N. 47½ degrees E. 2.50; N. 16 degrees W. 2.50; *S. 86½ degrees W. 2.50, spur of marsh*

*extends out North;* S. 57 degrees W. 4.50; S. 33¼ degrees W. 4.50; S. 63 degrees W. 4.50; N. 81 degrees W. 2.80 at 1.10, enter Pitts' enclosure; N. 39½ degrees W. 3.00, enter corn field;" thence according to seven designated calls bearing westerly and southerly around Lot No. 2 "to the corner to fractional sect. 4 and 9, thence in sect. 9," etc. Under "General Description" this note appears—"The front land on James' Bayou is above the common average. The back land is thin and poor, post oak, flat. James' Bayou is navigable in ordinary seasons for large boats. The slough or water course near the original transverse in front of Sec. 10, is now dry and can only be traced by the rotten drift wood."

March 1, 1878, Thomas H. Pitts received from the United States a conveyance of "Northwest quarter of the Northeast quarter of Section Nine, . . . containing Forty Acres, according to the official plat." By patent dated February 18, 1892, which recites a soldier's warrant for 120 acres had been deposited, the United States conveyed to Thomas H. Pitts "Lots numbered one, two, three and four of Section Nine and the Lots numbered one and two of Section Four in Township Twenty North, of Range Sixteen West, of Louisiana, Meridian, in the District of Lands subject to sale at Natchitoches, Louisiana, containing One Hundred and Twenty-three acres and eighty-eight hundredths of an acre, according to the Official Plat of the Survey of said Lands returned to the General Land Office by the Surveyor-General."

Pitts' title to 163.88 acres "with all buildings and improvements," described substantially as in his two patents—one for forty acres, the other 123.88 acres—was conveyed November 23, 1880, to Walsch for $250.00; February 15, 1884, Walsch conveyed to Noel for $300.00; and on April 15, 1910, Noel conveyed the 163.88 acres "more or less" to plaintiff company for recited consideration of $50,000.

It appears that north and northeast from the northernmost traverse line of Lot No. 1 designated in field notes "S. 86½ degrees W. 2.50, spur of marsh extends out North," and between it and James Bayou, there is and was at time of Bristol survey a narrow ridge of high land 1636.8 feet long and contiguous fast ground, amounting altogether to about forty acres (87 according to defendants' estimate), upon which is much large growing timber including cypress, hickory, gum and oak—one oak 400 feet beyond the traverse lines being 14 feet in circumference. This is the land in dispute. To the south of the Bristol survey and outside its traverse lines lie 300 acres of fast land surveyed and platted by Barbour in 1896.

The Oil Company claimed traverse lines around Lot No. 1 must be treated as true meanders; that being owner and in actual possession of the lot it had constructive possession of land lying beyond such lines east and north to the Bayou—forty acres or more; and that this was being trespassed upon. Defendants in error maintained the traverse lines were not intended as true meanders; that the grant was limited by courses and distances specified; and lands north and east of these were left unsurveyed with title remaining in the Government.

The trial court sustained The Oil Company's contention and adjudged it entitled to be maintained in possession of Lot No. 1 "and that the tongue of land, on which defendants and their lessee have drilled an oil well, projecting North, and bounded North, East and West by Jeems Bayou, is a constituent and component part of Lot Number One, the boundary of said Lot Number One being the water line of Jeems Bayou; it being the purpose of this judgment to fix Jeems Bayou as the boundary of said lot without regard to any arbitrary lines of survey."

Upon appeal the Supreme Court of Louisiana (132 Louisiana, 691, 698–700, 703, 707) reversed the judgment of the trial court. It declared—"Plaintiff claims posses-

sion of the land in this suit as owner; and it produces a title from the United States government showing it to be the owner of Lot No. 1, containing 12.84 acres, and it claims the additional 40 or 87 acres, as the case may be, as a part of lot No. 1, lying between the Bristol meander line and Jeems Bayou; treating said meander line as a regular meander line, and not a boundary line. But, we cannot so consider it; particularly in view of the admission of plaintiff that: 'It is admitted by both parties, that the land in controversy is high land, and was high land at the date that Bristol made his survey in 1871.' . . . As plaintiff and its authors held no title to the land referred to it has had neither actual nor constructive possession of the same, and cannot therefore be heard to complain of the acts of these defendants. Its demand for possession must be denied. The meander line established by Bristol on the east and northeast of lot No. 1 does not meet any of the requirements set forth by the Supreme Court of the United States in defining a meander line in *Railroad Co.* v. *Schurmeir*, 7 Wall. 272, 286. . . . Tested by this definition, which is sustained by all authorities, the so-called meander line of Bristol fails in all respects. *Niles* v. *Cedar Point Club*, 175 U. S. 300. . . . A glance at the annexed map, taken from the Williams and Barnes maps in the record, (Bristol made no map or plat, and the one made by the draftsman in the Land Office is very small and apparently without reference to a scale), shows that the Bristol meander line does not purport to define the sinuosities of a stream; it is not represented as the border line of a stream; and it shows, to a demonstration, that the meander line, as actually run on the land on the east and northeast of lot No. 1, is the boundary, and that a water course is not the boundary. . . . The evidence in the record in this case, aside from the admissions of record, shows that there was and is a large quantity of swamp or marsh land on the east and north of the Bristol

meander line. . . . If the eastern and northern boundaries of lot No. 1 were taken out and other boundaries substituted, so as to reach Jeems Bayou, plaintiff would get three to seven fold more land than was actually mentioned and described in the patent conveying this lot, or than its ancestor in title supposed he was purchasing, or than he actually paid for."

The cause is here by writ of error and the Oil Company maintains that it was obligatory upon the Supreme Court to accept the Government survey, plat and patent as correct; to treat traverses about Lot No. 1 as true meanders of the Bayou; and to hold, in consequence, that boundaries of the grant extended to the stream and include the *locus in quo.* The substantial Federal question presented—the only one for our determination—is whether properly construed the original patent conveyed to Pitts land lying between platted traverse lines and waters of the navigable stream. *Waters-Pierce Oil Co.* v. *Texas (No. 1),* 212 U. S. 86, 97. The effect of riparian rights, if established, would depend upon the local law. *Hardin* v. *Shedd,* 190 U. S. 508, 519; *Whitaker* v. *McBride,* 197 U. S. 510, 512.

Many causes decided by this court involved construction of patents conveying public lands by reference to official surveys and plats indicating streams or other waters. *Railroad Co.* v. *Schurmeir,* 7 Wall. 272, 286; *Cragin* v. *Powell,* 128 U. S. 691, 696; *Hardin* v. *Jordan,* 140 U. S. 371, 380; *Mitchell* v. *Smale,* 140 U. S. 406, 412; *Horne* v. *Smith,* 159 U. S. 40, 42; *Grand Rapids &c. R. R.* v. *Butler,* 159 U. S. 87, 92; *Ainsa* v. *United States,* 161 U. S. 208, 229; *Niles* v. *Cedar Point Club,* 175 U. S. 300, 306; *French-Glenn Live Stock Co.* v. *Springer,* 185 U. S. 47, 51; *Kirwan* v. *Murphy,* 189 U. S. 35; *Hardin* v. *Shedd, supra; Security Land &c. Co.* v. *Burns,* 193 U. S. 167; *Whitaker* v. *McBride, supra; Graham* v. *Gill,* 223 U. S. 643, 645; *Scott* v. *Lattig,* 227 U. S. 229, 244;

*Chapman* v. *St. Francis*, 232 U. S. 186, 196; *Gauthier* v. *Morrison*, 232 U. S. 452, 459; *Forsyth* v. *Smale*, 7 Biss. 201 (9 Fed. Cas. No. 4950, p. 471). A review and analysis of these cases would be tedious and unprofitable; thorough acquaintance with the varying and controlling facts is essential to a fair understanding of them. They unquestionably support the familiar rule relied on by counsel for the Oil Company that in general meanders are not to be treated as boundaries and when the United States conveys a tract of land by patent referring to an official plat which shows the same bordering on a navigable river the purchaser takes title up to the water line. But they no less certainly establish the principle that facts and circumstances may be examined and if they affirmatively disclose an intention to limit the grant to actual traverse lines these must be treated as definite boundaries. It does not necessarily follow from the presence of meanders that a fractional section borders a body of water and that a patent thereto confers riparian rights.

In the instant case we find a survey of improved lands made at the express request of the occupant to whom they were subsequently patented; a grant from the United States specifying the exact number of acres conveyed; a positive declaration in field notes that land to the north lies outside the traverse lines; admission that excluded area contains not less than 40 acres of high ground, and evidence of large timber growing there; official plat delineating the surveyor's courses and specifying acreage of the several subdivisions, which cannot be said to indicate a water boundary beyond possible question. Outside the southern traverses of this plat, in space designated "Open Lake," lie 300 acres of fast land surveyed by Barbour in 1896. Although Noel, the Oil Company's immediate vendor, as owner, was in possession of property known as Wilson's Point place for some thirty years, and until after alleged unlawful entry by

defendants in error, his corporeal possession (as expressly stipulated) was limited east and north by the Bristol traverse lines and he never occupied or exercised any act of corporeal possession over the above-indicated forty acres or more without the same.

Considering all disclosures of the record we are unable to conclude the court below erred in holding original patent from the United States to Pitts conveyed no title to lands in controversy, and its judgment must be affirmed.

It seems proper to add that nothing in this opinion or the judgment to be entered thereon shall be taken to prejudice or impair any right which the United States may have in respect to the lands in controversy.

*Affirmed.*