(110 So. 740)

No. 27570.

## LAND v. BROCKETT.

(Oct. 5, 1926. Rehearing Denied Nov. 29, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Navigable waters** ⬅⮞37(7)—Patent to land on navigable water conveys title to water line.

As general rule, land patent that refers to official plat showing that land borders on navigable body of water conveys title to water line, since meander lines purporting to represent edge of navigable water are not to be regarded as boundary lines, because it is impossible for surveyor to delineate precisely meanders of stream.

**2. Public lands** ⬅⮞26—Where area of high land between meander line and water line is great compared with subdivision surveyed, it is not included in patent.

Where discrepancy between meander line shown on official plat as boundary of land patent and actual water line is so gross, and area of high land omitted from survey is so great in comparison with subdivision surveyed as to make it certain that surveyor did not actually make approximate meander of water line, land omitted from survey is not included in patent of subdivision surveyed.

**3. Public lands** ⬅⮞26—Tract of land bordering on lake omitted from survey of fractional quarter section described in patent held not included in patent.

Where patent conveyed fractional northwest quarter section containing 50.95 acres, and 90.62 acres of high land remained on peninsula outside of meander line on official plat, and therefore outside of and not included in survey, *held* discrepancy was so great that patent did not convey title to the additional 90.62 acres bordering on water.

**4. Public lands** ⬅⮞35(5)—Homesteader in possession held not trespasser.

Defendant in petitory action, who had gone into possession of land, which plaintiff had no claim on, as a homesteader, fenced it off and built a residence with intention of perfecting homestead entry, *held* not a trespasser.

**5. Real actions** ⬅⮞7(2)—Petitory action; plaintiff in petitory action had to depend on strength of own title, not on weakness of defendant's.

Plaintiff in petitory action, claiming that he had acquired land by mesne conveyances from one who had patent from United States, had to depend on strength of his own title, not upon weakness of defendant's, who was in possession as a homesteader.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Possessory action converted into a petitory action by John R. Land against Columbus Brockett. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Clifton F. Davis, of Shreveport, for appellant.

Thigpen, Herold, Lee & Cousin, of Shreveport, for appellee.

O'NIELL, C. J. This was originally a possessory action, with an injunction forbidding the defendant to trespass upon the land which he had taken possession of. On his proving that he had had possession of the land longer than a year, the plaintiff's attorneys, with the consent of the defendant's attorney, converted the suit into a petitory action, in which the plaintiff prayed to be declared the owner of the land. He holds title by mesne conveyances from Francis M. Hughes, who had a patent from the United States, dated the 1st of June, 1860, describing the land as:

"The northwest fractional quarter of section thirty in township eighteen of range fifteen in the district of land subject to sale at Natchitoches, Louisiana, containing fifty acres and ninety-five hundredths of an acre, according to the official plat of the survey of said lands, returned to the General Land Office by the Surveyor General."

The land in dispute is a tract containing 90.62 acres (51.12 acres in the west half and 39.50 in the east half of section 30), in the form of a peninsula, in Cross Lake, extending southeastward from the southern and

eastern traverse or meander line along what was delineated as the front or water edge of the fractional northwest quarter of section 30, on the plat of survey made by A. W. Warren, deputy surveyor, in 1838, approved by the Surveyor General on the 19th of March, 1839. A new survey, made in 1922, under the direction of the General Land Office, in the matter of certain applications for the survey of alleged unsurveyed public lands, disclosed that the line on the Warren survey, purporting to meander the lake shore, did not coincide with the water line, and that, in section 30, this peninsula, having an area of 90.62 acres, was not shown on Warren's survey. The defendant went into possession of the 90.62 acres as a homesteader, fenced it off from the tract of 50.95 acres surveyed by Warren, and built a residence and outhouses upon it, with the intention of perfecting a homestead entry.

The district court gave judgment for the plaintiff, declaring him the owner of the land in dispute. The defendant took this appeal.

Here is a sketch, showing the discrepancy between the meander line as drawn on the Warren map and the actual lake shore line as shown by the new survey:

▨ LAND IN DISPUTE.

☐ N.W.¼ SEC. 30, WARREN SURVEY.

▨ AND ▨ PUBLIC LANDS - NEW SURVEY.

The land in contest is a part of the upland areas that were omitted from the Warren survey, and which the Commissioner of the General Land Office, in a letter to the Secretary of the Interior, in October, 1922, recommended should be surveyed. It is above the 172-foot contour line established by the United States government as the mean high-water level in 1812. The land was therefore not in the bed of the lake when Warren made his survey. State v. Bozeman et al., 156 La. 635, 101 So. 4. No other survey of section 30 was made until this new survey was made, in 1922.

The field notes show how the Warren survey of section 30 was made. The surveyor commenced at the southwest corner of the township and ran north. At 40 chains he put a post, marking the quarter section; at 63 chains he came to the edge of the lake, where he set up a traverse post; thence he offset 40 chains to the west, and ran north 77 chains; then offset 40 chains east, to the lake, and set up a traverse post; thence north 24 chains to a lagoon 7 chains wide; continuing north, at 31 chains he set his second mile post; at 40 chains he set his quarter section post; and at 80 chains set his third mile post. The north line of section 30 was run by commencing at the northeast corner of the section, being the common corner of sections 19, 20, 29, and 30. Running west, at 40 chains the surveyor set his quarter section post, marking the center of the north boundary of the fractional section, and at 54 chains, at the lake shore, he set his traverse post. The east line of section 30 was run by commencing again at the northeast corner of the section and running south 24 chains to the lake shore, where the surveyor set his traverse post. That method of surveying the west, north and east boundary line of the section—the end of each of which lines was cut off by the lake shore—was according to the second rule laid down in U. S. Rev. Stat. § 2396 (U. S. Comp. St. § 4804), viz.:

"The boundary lines actually run and marked in the surveys returned by the Surveyor General shall be established as the proper boundary lines of the sections or subdivisions for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which have not been actually run and marked [meaning particularly the interior section lines] shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; *but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south due east and west, as the case may be, to the water course,* Indian boundary line, or other external boundary of such fractional township." (The italics are ours.)

It is argued by the learned counsel for the plaintiff that the surveyor, by running the western boundary of this fractional section due south from the established northwest corner of the section to the lake, and by running the northern boundary line due west from the established northeast corner to the lake, and by running the eastern boundary due south from this same established corner to the lake—all as required by the rule which we have quoted—demonstrated that he intended to make the lake shore itself the front boundary of the fractional quarter section, wherever the water line might be. That would be true if the surveyor had not run any other line of the section than the west, north and east line, extending to the lake shore. But, on the plat and field notes which he returned to the Surveyor General, and which went on record in the General Land Office, under the provisions of section 2395, U. S. Rev. Stat., the surveyor represented that he had actually traversed the front boundary line of the fractional northwest quarter of section 30, bordering on Cross Lake, thus: Commencing at the traverse post which he had placed on the west boundary line of the section, he ran S. 80° E. 8 ch.; E. 12 ch.; N. 61° E. 5 ch.; N. 48° E. 7 ch.; N. 18° W. 5 ch.; N. 60° W.

8 ch.; S. 82° W. 6 ch.; N. 47° W. 10 ch.; and N. 36° W. 13 ch., across a lagoon to his second mile post, on the west boundary, or range line. We have marked the distances on the accompanying sketch, but, for want of space, have omitted the courses, of the line thus run by the surveyor, as shown on the field notes of the Warren survey, as representing the meander line of the fractional N. W. ¼ of section 30. The line cuts off the 90.62 acres of land in contest, near the base of the peninsula, and represents the fractional N. W. ¼ of the section as containing only 50.95 acres. That is why the fractional N. W. ¼ of the section was described in the patent that was issued to Francis M. Hughes, under whom the plaintiff claims title, as "containing fifty acres and ninety-five hundredths of an acre, according to the official plat of the survey of the said lands, returned to the General Land Office by the Surveyor General."

No reason has been suggested for the omission of these areas of high land from the Warren survey, except that the land was then of little value and the difficulties and expense of meandering the lake shore were comparatively great, the place being remote from any base of supplies, and being, as we understand from the field notes, in a forest of oak, gum, hickory and pine. The smallness in value of the land, compared with the expense and difficulties of surveying it, might have justified the surveyor's cutting across the base of this peninsula, as he did, instead of traversing, approximately, the lake shore around it; but those considerations can hardly be said to justify the misrepresentation of the shore line, and the misrepresenting of a comparatively vast area of high land as being in the bed of the lake.

[1, 2] The case is governed by the decisions of the Supreme Court of the United States on the subject. The general rule is that meander lines purporting to represent the edge of a navigable stream or body of water are not

to be regarded as boundary lines, and that a land patent that refers to an official plat showing that the land borders on a navigable body of water conveys title to the water line. The reason for the rule is that it is not possible for a surveyor to delineate precisely, in a series of straight lines, the meanders of a stream or body of water. One of the exceptions to the rule stated is that, when the discrepancy between the meander line shown on the official plat and the actual water line is so gross, and the area of high land omitted from the survey is so great in comparison with the subdivision surveyed, as to make it certain that the surveyor did not actually make, approximately, a meander of the water line, the government may afterwards survey and dispose of the omitted high land as public land which was theretofore unsurveyed. No hard and fast rule has been or can be established, based upon the extent of discrepancy, or proportion of omitted area, that would be applicable to any and every case. The general rule, that the patentee takes title to the actual water line, was applied in the following cases, relied upon by the plaintiff in this case, viz : St. Paul & Pacific R. Co. v. Schurmeier, 7 Wall. 272, 19 L. Ed. 74; Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 808, 838, 35 L. Ed. 428; Mitchell v. Smale, 140 U. S. 406, 11 S. Ct. 819, 840, 35 L. Ed. 442; and United States v. Lane, and the five companion cases, 260 U. S. 662, 43 S. Ct. 236, 67 L. Ed. 448. The rule was declared to be not applicable in the following cases, relied upon by the defendant in this case, viz.: Horne v. Smith, 159 U. S. 40, 15 S. Ct. 988, 40 L. Ed. 68; Niles v. Cedar Point Club, 175 U. S. 304, 20 S. Ct. 124, 44 L. Ed. 171; French-Glenn Live Stock Co. v. Colwell, 185 U. S. 54, 22 S. Ct. 566, 46 L. Ed. 804; French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 S. Ct. 563, 46 L. Ed. 800; Security Land & Exploration Co. v. Burns, 193 U. S. 167, 24 S. Ct. 425, 48 L. Ed. 662; Chapman & Dewey Lumber Co. v. St. Francis Levee District, 232 U. S. 186, 34 S. Ct. 297, 58 L. Ed. 564; Gauthier v. Morrison, 232 U. S. 452, 34 S. Ct. 384, 58 L. Ed. 680; Producers' Oil Co. v. Hanzen, 238 U. S. 325, 35 S. Ct. 775, 59 L. Ed. 1330; Lee Wilson & Co. v United States, 245 U. S. 24, 38 S. Ct. 21, 62 L. Ed. 128; Jeems Bayou Fishing & Hunting Club v. United States, 260 U. S. 561, 43 S. Ct. 205, 67 L. Ed. 402.

[3] Our opinion, formed from the discussions in the decisions cited, is that the discrepancy in this instance is so great that the patent that was issued to Francis M. Hughes, conveying the fractional N. W. ¼ of section 30, T. 18, R. 15, "containing fifty acres and ninety-five hundredths of an acre, according to the official plat of the survey," etc.—meaning the Warren survey—did not convey title for the additional 90.62 acres, not included in the survey.

[4, 5] It is argued by the learned counsel for the plaintiff that the defendant, having no title to the land, must be dealt with as a trespasser and be judged by the familiar rule that a plaintiff in a petitory action is only required to show an apparent title, to evict an occupant without right or title. The defendant is not a trespasser. He is in possession, intending to perfect a homestead entry, of public land, which the plaintiff has no claim upon. In that respect the case is very much like Gauthier v. Morrison, supra. The case is subject to the familiar rule that the plaintiff in a petitory action must depend upon the strength of his own title, not on the weakness of the defendant's.

The judgment is reversed, and the plaintiff's demand is rejected, at his cost.

LAND, J., recused.