IsSOL GOTHARD, Judge.
Plaintiff, Board of Commissioners of the Lafourche Basin Levee District (Levee District) appeals from a judgment dismissing its action to be declared owner of lands in possession of defendant Rathborne Land Co. (Rathborne). We affirm the decision of the trial court.
The Levee District instituted this action alleging that it was owner of property bordering Lake Des Allemandes that was in possession of Rathborne Land. The Levee Board argued that it was the owner of the disputed property by virtue of a perfected title tracing back to the sovereign via a land grant from the United States to the State of Louisiana in 1923. Rathborne, in defense, argued that the patent purporting to vest ownership of the disputed land in the State of Louisiana was invalid, as the property at issue had already been deeded to its (Rathborne’s) ancestors in title.
The facts adduced at trial reflect that in the winter of 1830, pursuant to a contract with the Surveyor General of the United States, Thomas Evans conducted a survey of the lands bordering Lake Des Alle-mands, more specifically Township 13 *930 South, Range 18 East, bordering on Lake Des Allemandes. An official plat of the survey was approved in 1832. That plat depicted a fractional section 9, bordering on the lake and containing 595.5 acres. (Each section that is not fractional contains 640 acres.) The plat also depicted a fractional section 10, bordering on the lake and subdivided into two lots. The east lot contained 163.96 acres and the west lot contained 84.03 acres. Thereafter, Adolph Wiendahl |3acquired ownership of the west half of fractional section 10; John Rykow-ski acquired ownership of the east half of fractional section 10; and Lezin Becnel acquired ownership of fractional section 9. In 1904, the Louisiana Cypress Lumber Company obtained ownership of all the lands in fractional section 9 and the east half of fractional section 10. It also acquired ownership of a portion of the west half of fractional section 10.[1] In 1927, Rathborne acquired ownership of the property from Louisiana Cypress Lumber Co., and it has been in possession since that time.
In 1859, a resurvey of a portion of Township 13 South, Range 18 East was conducted by Maurice Hauke, and an official plat of this survey was approved in 1859. Hauke’s plat depicts section 9 as a complete section, not bordering the lake and containing 640 acres, and fractional section 10 as containing 639.6 acres. Thus, Hauke’s resurvey increases the area of section 9 by 44.5 acres and section 10 by 391.6 acres.
Subsequently, the State of Louisiana selected sections 9 and 10 pursuant to the Swamp Land Grant. On July 15,1896, the United States cancelled these selections as duplicative. Thereafter, on September 25, 1923, the United States issued a patent to the State of Louisiana for those portions of section 9 and 10 “lying between the meanders of Lake Des Allemands as shown on the plat approved July 9, 1832 and the meanders of that lake as shown on the plat approved September 26, 1859.” On March 15,1951, the State transferred that portion of land to the Levee District, plaintiffs herein.
On June 16,1999, the Levee Board instituted this petitory action, seeking to be recognized as owner of the land “lying between the meanders of Lake Des Alle-mandes on the survey plat approved on July 9, 1832” and “the meanders of |4Lake Des Allemandes as shown on the survey plat approved on September 28(20), 1859.” After trial on the merits, the trial court rendered judgment declaring Rathborne to be the owner of “44.50 acres in Section 9, Township 13 South, Range 18 East, and; 391.23 acres in Section 10, Township 13 South, Range 18 East.” The Levee District filed a motion for new trial, which the trial court granted only on the narrow issue of Rathborne’s claim to the property located in the western half of fractional section 10. Thereafter, the trial court rendered judgment on the new trial, holding that “... the Board is not the owner of the excess property in question. Additionally, Rath-borne has not presented evidence sufficient to delineate with specificity the ownership parameters of Lot 2 in the west half of Section 10 and, therefore, cannot be declared owner of the excess land in the west half of Section 10.”
Plaintiff initiated this suit as a petitory action, admitting that Rathborne was in possession of the land in question.
La C.C.P. art. 3651 states:
The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable *931 property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiffs ownership.
To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof. La. C.C. art. 531; La. C.C.P. art. 3653(1). That is, the plaintiff must show “valid record title”, or “title good against the world without regard to the title of the party in possession.” The plaintiff must produce a prima facie complete chain of title before the defendant in possession must go forward with any proof. Gaudet v. City of Kenner, 487 So.2d 446, (La.App. 5 Cir.1986), writ den. 493 So.2d 638 (La.1986). Once plaintiff has proved |Khis title, the focus is then on defendant’s title. Bickham, Inc. v. Graves, 457 So.2d 1210, (La.App. 1 Cir.1984).
Plaintiff herein has produced title back to the sovereign, by virtue of a patent issued in 1929. Thus, the focus then shifted to Rathborne. Rathborne contended the patent issued by the United States was invalid, because it purported to transfer ownership of land that the United States did not own. Rathborne argued that the patents issued pursuant to the Evans survey transferred the ownership of the land up to the water’s edge, and therefore the United States could not issue a patent for land “from meander to meander.”
 In general, meanders are not to be treated as boundaries, and when the United States conveys a tract of land by patent referring to an official plat which shows the same bordering on a navigable river, the purchaser takes title up to the water line. Producers Oil Co. v. Hanzen, 238 U.S. 325, 35 S.Ct. 755, 59 L.Ed. 1330 (1915). The meander line is not a boundary, but the body of water whose margin is meandered is the true boundary. Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 35 L.Ed. 442 (1891). The reason for this rule is that it is not possible for a surveyor to delineate precisely, in a series of straight lines, the meanders of a stream or body of water. Land v. Brockett, 162 La. 519, 110 So. 740 (1926), cert. den. 273 U.S. 757, 47 S.Ct. 460, 71 L.Ed. 877 (1927). Furthermore, a resurvey after the issuance of a patent does not affect the rights of the landowner. United States v. State Investment Co., 264 U.S. 206, 44 S.Ct. 289, 68 L.Ed. 639 (1924). However, if the facts and circumstances affirmatively disclose an intention to limit the grant to actual traverse lines, these must be treated as definite boundaries. Producers Oil Co., supra.
This rule, that the purchaser takes to the water line, will not be applied where the facts conclusively show that no body of water existed or exists at or near the place indicated on the plat, or where there never was an attempt to survey the Rland in controversy. Jeems Bayou Fishing & Hunting Club v. United States, 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 (1923); United States v. Zager, 338 F.Supp. 984 (E.D.Wis.1972). Likewise, the rule will not be applied where the circumstances, as well as the extent and character of the lands, necessitate the conclusion that the omission was deliberate, or the result of such gross and palpable error as to constitute a fraud upon the government. Jeems, supra.
In Zager, supra, 338 F.Supp. at 989, the court said:
In dealing with the exception based on gross error, it is important that the adjective “gross” not be overlooked, for as *932 indicated earlier when dealing with the Government surveys of the last century, error is to be expected. Indeed, the general rule is founded upon this expectation for the rule “evolved because of the difficulty surveyors had in following the edge or margin of projections of land and all the various sinuosities of the water line.” And because when these surveys were undertaken, often “the lands were of such little value, the locality so wild and remote, and the attendant difficulties so great that the expenditure of energy and money necessary to run the lines with minute regard to the sinu-osities of the lake would have been quite out of proportion to the gain.” Thus, in deciding a question of gross error, attention must be paid to “the amount and proportion of acreage between the meander line and the shore,” and this must be balanced with “the circumstances surrounding the original survey, and the type and comparative value of the land at that time.”
The trial court, in its ruling, applied the general rule to find that appellees were the owners of the property at issue. It considered the exceptions to the rule as set forth in the applicable jurisprudence, and found that none were applicable to this case. In this appeal plaintifflappellant, the Levee District, argues error in the trial court’s application of the law to the facts of this case. The Levee Board contends that the trial court erred in its interpretation of the applicable jurisprudence, and that the correct application of those cases results in a finding that the meander, and not the water line, is the boundary.
The Levee District first contends that the trial court committed manifest error in finding that the land in dispute was in existence when Evans conducted his survey in 1830. The Levee District argues that the field notes prepared by Evans 17while conducting the survey are part of that survey. In those notes Evans stated that he placed his markers at or near the lake, and he did not state that there was land that could not be accessed. Accordingly, the land between the Evans meander and the Hauke meander accrued after Evans’ survey and was not deeded to Rathborne’s ancestors in title.
Rathborne contends that the land at issue was in existence in 1830, and therefore was included in the patent issued to its ancestors in title. Rathborne points to the testimony of its expert witness, who stated that it was geologically impossible for the land lying between the meanders to have emerged between 1832 and 1859.
The trial court considered the evidence presented by both plaintiff and defendant, and found that “The court is convinced, with both the assistance of Mr. Battle [the expert witness] and common sense, that the land in question ‘existed’ when Evans surveyed the property” and that the land was “overflow prairie.” Our review of the record fails to find manifest error in this ruling.
The remaining allegations of error made by the Levee Board assign legal error to the trial court’s application of the jurisprudence in resolving this issue. The Levee Board further contends that the trial court erred in distinguishing the Jeems case, supra, and in refusing to consider the legal effects of Evans’ failure to survey the land. Finally, the Levee Board argues that the trial court erred in its interpretation of the “gross error” rule.
In his reasons for judgment, the trial court stated that there was no evidence to suggest that the survey did not take place, rather, “the detailed notes, in conjunction with the maps showing the shoreline of Lake Des Allemands and the overflow prairies are convincing evidence *933 that Evans did complete a traverse what he thought were the boundaries of the lake.” After our review of the record, we agree with the trial court.
lain finding that the “gross error” rule was not applicable, the court said:
In this case, Mr. Evans surveyed a total of 13,492.56 acres in Township 13, Range 18 East. The later survey, performed by Maurice Hauke, shows a total area for the same Township as 17,571.01 acres. Thus, comparing the two survey results in a total area of omitted land in.the amount of 4,078.45 acres, or 23.21%. Considering that at the time the survey was made, “the lands were of such little value, the locality so wild and remote, and the attendant difficulties so great that the expenditure of energy and money necessary to run the lines with minute regard to the sinuosities of the lake would have been quite out of proportion to the gain,” the court cannot say that a 23.21% discrepancy rises to the level of “gross error.”
In their motion for new trial, the Levee Board argued that the trial court erred in using the “entire township” standard as a basis for deciding the issue of gross error. The trial court rejected that argument and declined to grant a new trial on that issue, stating that:
... it makes more sense to compare all of the land surveyed by Mr. Evans in the Township to the amount that was omitted. This is so because the gross error exception rests on the errors of the surveyor. In this case, Evans was the surveyor. Thus, the only way for this court to determine whether Mr. Evans’ errors were “gross” is to look at all of the work he performed in this area, and to then determine his total error. Looking at one fractional section, on the other hand, would only give a small picture of Mr. Evans’ error. For example, if Mr. Evans had only omitted 2 acres on a 60 acres fractional section, but had otherwise omitted 60% of the remaining sections making up a Township, a comparison of only the fractional section would lead to the conclusion that his survey was not in “gross error” while clearly, regarding the entire Township would lead to the opposite conclusion.
We agree with this rationale of the trial court, and we decline to disturb its ruling. Because we find that the trial court did not commit error in failing to find “gross error,” we find no error in its determination that the Levee District was not the owner of the land at issue.
For the above discussed reasons, the ruling of the trial court is affirmed, all costs are assessed against appellants.

AFFIRMED.

. Ownership of the remaining west half of fractional section 10 was acquired by Graug-nard and Caire, who are not a party to this suit.