*476 JUSTICE RICE
dissenting.
¶40 The Court finds that the property survey at issue “uses meander lines” and from that factual predicate concludes that the disputed property is subject to the long-established rule, first stated by the United States Supreme Court in 1869 and cited by this Court in Faucett, to the effect that a meander line does not constitute a property’s boundary, but rather, the water does. I submit that neither the Court’s factual predicate nor its application of the meander rule to the property dispute here is correct.
¶41 The roots of the meander rule can be traced to Congressional enactments of the 1780s and 1790s providing the methods by which the territories ceded to the national government by the several states would be divided into townships and tracts. See Railroad Company v. Schurmeir (1869), 74 U.S. 272, 7 Wall. 272, 19 L.Ed. 74. The purpose of the rule was to create a convenient mechanism for determining the quantity of government land to be sold— with the land below the meander line being free of charge. As the United States Supreme Court has explained, which we noted in Faucett, “[i]t has been the practice of the government from its origin, in disposing of the public lands, to measure the price to be paid for them by the quantity of upland granted, no charge being made for the lands under the bed of the stream or other body of water.” Hardin v. Jordan (1891), 140 U.S. 371, 380, 11 S.Ct. 808, 35 L.Ed. 428. Thus, the rule was originally a bureaucratic convenience, explained by the part of the rule which the Court has spliced out of the quotation of it in ¶ 20: "... for the purpose of defining the sinuosities of the banks of the lake or river, in order to ascertain the exact quantity of the upland to be charged for.” Faucett, 82 Mont. at 257, 266 P. at 648 (emphasis added). The amount of land and the purchase price was thus determined based upon the meander line, but, as the Court correctly notes, generally-but subject to an important exception discussed herein-the actual property line extended to the water itself.
¶42 Understanding the reason for this rule becomes important in this case. A distinction was made between the meander line and the actual property line out of a very practical concern: “The reason for this rule is that it is not possible for a surveyor to delineate precisely, in a series of straight lines, the meanders of a stream or body of water.” Board of Com’rs v. Rathborne Land Co., Inc. (La. App. 2004), 868 So.2d 928, 931. Thus, meander lines were not thought to be accurate indicators of property boundaries, and were not generally used as such. “[F]or various reasons, meander lines are inherently inaccurate, meant only *477 to approximate the course of a water body.” George J. Morgenthaler, Surveys of Riparian Real Property: Omitted Lands Make Rights Precarious, 30 Rocky Mtn. Min. L. Inst. 19-1, 19-10 & nn.19-21 (1984). Thus, the purpose of the meander rule, as this Court has explained, is to “ascertain the exact quantity of the upland to be charged for,” Faucett, 82 Mont. at 257, 266 P. at 648, or, as the United States Supreme Court has explained, the rule is “the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser.” Schurmeir, 74 U.S. at 287.
¶43 In ¶ 27 the Court concludes that the official survey in this matter “uses meander lines.” Unfortunately, the Court fails to acknowledge the evidence herein which demonstrates that the reason for the rule-the need to “ascertain the exact quantity” of land purchased-does not exist, making the rule inapplicable?
¶44 Although a meander line is not meant to set the boundary of a tract, but is “meant only to approximate the course of a water body,” the line in question here, and the plat as a whole, leaves no doubt that the line was designed to constitute the boundary of the tracts. The survey sets a precise, point to point, metes and bounds description of every piece of the entire circumference of the property. Each point, even those on the River’s bank, is given a precise location. Each separate line is point to point. Each curve within the fines, even those along the Jefferson River, is calculated by radius and measured in length. The property fines around each individual lot are measured and set. And, critically, the specific acreage of each lot is calculated and set forth on the plat itself. (See attached plat.) Thus, there is no need whatsoever to “ascertain the exact quantity of the upland to be charged for” because the exact quantity has not been left to chance. To the contrary, the survey has precisely calculated the exact quantity of land which Anderson purchased.
¶45 Thus, the survey fine in question is not a “meander fine” but, rather, a boundary fine. Consequently, the survey clearly “indicates a different intent,” as provided in § 70-16-201, MCA, and the purchaser does not take to the river. How can a purchaser extend his property to the water by virtue of a claimed “meander fine” when the purchase price he paid was based on specifically calculated acreage? None of the authority cited by the Court would allow a purchaser to do so.
¶46 To be sure, the survey does use the word “meandering” on one occasion within its legal description of the property, and makes several references to the Jefferson River. That is an insufficient basis, however, to turn a precisely surveyed boundary fine into a meander *478 line, where the survey itself left no purpose for a meander line to fill. Although the survey uses the word “meandering” as an additional descriptive of the location of the property’s boundary line, the survey does not default to the meander line to set the property’s boundary line. No part of this property has been left undetermined, or somehow contingent upon the vagaries of a flowing river. This becomes apparent visually when one views the plat attached hereto.
¶47 The meander rule was to be applied in the absence of a survey to “delineate precisely, in a series of straight lines, the meanders of a stream or body of water.” Rathborne, 868 So.2d at 931. That is clearly not the case here. Here, a survey was painstakingly completed which left no part of the property boundaries to chance. Though reference was made to the Jefferson River, noting at what points the property line intersected, traversed and departed from the bank of the River, the property line “meandered” the River in a colloquial sense only; that is, the River’s “meander line” was not used to create the boundary. That was done by specific surveying calculations and each lot’s acreage was carefully determined in advance of the sale. Thus, this is not a survey premised upon a meander line. As such, the meander rule is not applicable here for purposes of determining the property’s boundaries.
¶48 Further, even if the meander rule did apply here, the rule, considered in its entirety, would not operate to grant the additional property to Respondent. As noted above, there are exceptions to the rule’s operation, one of which is at issue here. In Producers Oil Co. v. Hanzen (1915), 238 U.S. 325, 35 S.Ct. 755, 59 L.Ed. 1330, the United States Supreme Court reviewed its many cases applying the meander rule since first announcing it in Schurmeir in 1869, and summarized the entire meander rule as follows:
[These cases] unquestionably support the familiar rule relied on by counsel for the Oil Company that in general meanders are not to be treated as boundaries and when the United States conveys a tract of land by patent referring to an official plat which shows the same bordering on a navigable river the purchaser takes title up to the water line. But they no less certainly establish the principle that facts and circumstances may be examined and if they affirmatively disclose an intention to limit the grant to actual traverse lines these must be treated as definite boundaries. It does not necessarily follow from the presence of meanders that a fractional section borders a body of water and that a patent thereto confers riparian rights.
*479 Producers Oil, 238 U.S. at 339 (emphasis added). See also Schultz v. Winther (Wisc. 1960), 101 N.W.2d 631, 636 (“The general rule is subject to exceptions. Circumstances may show that what appears to be a meander line rather than the shore of a body of water some distance away was intended as a boundary. The area of land between the meander line and the actual shore has been considered a circumstance hearing upon the question of intent.” (Emphasis added.)).
¶49 Regarding the question of intent in this case, although there is clear testimony that Monfortons’ expressed intention was to create definite surveyed boundaries, and not default to a “river boundary,” I do not believe it is necessary to look to such evidence in order to determine intent, and therefore, I believe summary judgment is appropriate-in favor of Appellant. As the Court correctly notes in ¶ 29, intent is determined by first looking to the documents themselves, but unfortunately, the Court then yields to the temptation to include references to extrinsic evidence that favors its decision.[1]
¶50 From a proper review of the documents, discussed above, there can be no question that the intent was to create unmistakable property lines and lots of specific size, because that is what the survey did. And thereafter, each deed incorporated by reference the specific property dimensions and acreage. Consequently, the meander rule is not applicable-it cannot be employed in order to disregard surveyed property lines and acreage calculations.
¶51 The Court, without consideration of the long history and governmental purpose of the meander rule, applies it to private transactions as well. See ¶ 24. It is a poor policy choice. We are now presmning that private persons also give away valuable riparian land without compensation, a rule of convenience for the government in yesteryear, but one of foolishness today. While this may affect future cases, it does not change the correct analysis here, as the meander rule simply should not apply.
¶52 I would reverse.
*480 [[Image here]]

 See, for example, ¶ 8, where the Court ascribes to the Monfortons an instruction to their surveyor to “survey lots all the way to the Jefferson River.”