62 So.2d 255

**PARHAM v. MAXWELL.**

No. 40482.

Nov. 10, 1952.

Rehearing Denied Dec. 15, 1952.

Wilton H. Williams, Jr., L. Y. Barnette and Chas. H. Blish, Shreveport, for plaintiff-appellee.

Bullock & Bullock, Shreveport, for defendant-appellant.

McCALEB, Justice.

This controversy involves the ownership of a portion of land fronting on Cross Lake in the Parish of Caddo. The area contains approximately 6.5 acres lying between the original traverse line of Cross Lake, as located by the U. S. Survey of 1837–39 and the 172 foot contour line established by a supplemental U. S. Survey approved on August 17, 1925, less two acres in the southeast corner of the strip to which plaintiff makes no claim.

The action originated as one in jactitation wherein plaintiff, alleging physical possession as owner, asserted that defendant has slandered his title by the recordation of a deed under which adverse ownership of the property is claimed. Affirming his pretensions of ownership by virtue of this deed, defendant converted the suit into a petitory action but, after a hearing on the merits, the judge of the district court rejected the claim and found in favor of plaintiff. Hence the appeal.

Lot 6 in fractional Section 4, T. 17 N.R. 14 W., Caddo Parish, in which the disputed land is situated, contains 49.60 acres and was patented to one Jonathan Guice on September 1, 1849. This lot, by mesne conveyances, passed to Matthew C. Monkhouse. On May 1, 1912, Monkhouse transferred 20 acres on the eastern side of the lot to H. C. Metcalf, who, on March 24, 1927, sold to plaintiff. In all of these deeds, the eastern boundary of Lot 6 was described as the traverse line of Cross Lake as located by the U. S. Survey of 1837–39, which was shown to be inaccurate by the supplemental U. S. Survey approved August 17, 1925 and under which the rights of those persons

holding U. S. patents were recognized. Plaintiff's title, therefore, emanates from a U. S. patent and it is his contention that, under the well-settled jurisprudence, Land v. Brockett, 162 La. 519, 110 So. 740, the original erroneous meander line of Cross Lake set forth in his title is not to be regarded as the boundary line but that he acquired title to all land extending to the water's edge.

■ Defendant's title, on the other hand, is founded on a quitclaim deed obtained in 1948 from the children of a colored man named John Pettiway and his wife, Linnie Clay Pettiway. However, the ownership of John Pettiway and his wife to the 6.5 acres is not by record title; it is based entirely upon a claim of acquisition by adverse possession for 30 years under Article 3499 of the LSA–Civil Code. Since defendant has converted the case into a petitory action, he, perforce, admits that plaintiff is in actual possession of the controverted acreage, Article 43, Code of Practice, and, in order to succeed, must do so on the strength of his own title and not on the weakness of that of his adversary. Code of Practice, Articles 43, 44; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 and cases there cited.

■ Hence, we direct our immediate attention to defendant's plea of prescription of thirty years.[1]

The record reveals that, about the year 1890, Steve Pettiway, the father of John Pettiway, settled on the two acres of land situated in the southeastern part of Lot 6 of Section 4, building thereon a log cabin where he lived with his family uninterruptedly until his death in 1915. Steve Pettiway was one of a number of Negro settlers, who occupied, as squatters, property in this vicinity of Caddo Parish bordering on Cross Lake. After the death of Steve Pettiway, his son, John, remained on the premises and reared a family of 12 children. In addition to his occupancy of the two acres in Lot 6 of Section 4, John Pettiway established a farm on the whole of Lot 10 of Section 4, which adjoins the two acre tract, and acquired this land as a homestead by patent from the United States on April 17, 1931. John Pettiway died in 1946. Thereafter, his succession was opened and his children were recognized as his heirs, being sent in possession of his estate by ex parte judgment of the First Judicial District Court in April of 1948.

Thus, it is established that John Pettiway was the owner of Lot 10 of Section 4 and that he and his father, Steve Pettiway, possessed the two acres in the southeastern part of Lot 6 of Section 4 since sometime in the 1890's, or for a period of more than thirty years. But, as stated above, the two acres of which the Pettiways had physical

---

1. Defendant has also pleaded the prescription of 10 years. Since neither he nor his vendors have been in possession for 10 years under a title translative of the property, as required by LSA–Civil Code Articles 3478, 3479 and 3483, the plea is obviously without substance.

possession are not in controversy. While there is considerable evidence concerning their possession of the land to the north of the two acres, it is, for the most part, of an indefinite and uncertain nature both in respect of their physical occupancy and their intention to possess as owners. There is, it is true, testimony that the Pettiways made crops on the disputed land at irregular intervals and that, on occasion, a few head of cattle were pastured thereon. There is also evidence of the use by the Pettiways and others of an old road extending from north to south through Lot 6; that they made repairs on a fence extending alongside this road and that, when they raised crops, fences were built to protect the crops from damage. But, as we have said, this evidence is of a vague and unconvincing character.

█ To acquire ownership of an immovable by adverse possession, it is essential that there be a continuous and uninterrupted possession, publicly and unequivocally under the title of owner for 30 years. Article 3500, LSA–Civil Code. To prove this possession, it is necessary that evidence be submitted that there were external and public signs, or other indicia, such as the keeping up of roads and levees, the payment of taxes and the like, announcing the possessor's intention to preserve his possession of the thing. Article 3501, LSA–Civil Code. But, even when such proof is made, the property subject to acquisition by prescriptive title is to be restricted within just limits, that is, it extends only to that "actually possessed by the person pleading it", Article 3503, LSA–Civil Code, i. e., the land enclosed for the entire prescriptive period by the possessor. Labarre v. Rateau, 210 La. 34, 26 So.2d 279. And, while the land claimed to be acquired need not be enclosed by fences, the markings of the boundaries, whether natural or artificial, must be of such a quality as to give " * * * definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof." Hill v. Richey, 221 La. 402, 59 So.2d 434, 440.

█ The judge of the district court, after a painstaking review of the evidence, opined that he was unable to determine as a fact that the Pettiways " * * * possessed uninterruptedly and under the claim of owner of any property outside of the two acre tract * * *". We agree with this ruling, it being our view that the proof falls far short of meeting the requirements laid down in the Civil Code and by the jurisprudence for the establishment of a prescriptive title by adverse possession.

The judgment appealed from is affirmed.