ELLIS, Judge.
On May 28, 1957 appellees secured a temporary restraining order and issuance of a rule nisi for a preliminary injunction in this suit which they filed against the appellant as a result of an alleged trespass by appellant which consisted of the cutting and removing of timber from the south portion of 100 acres of land allegedly owned by appellees, situated partly in the parishes of St. Helena and Livingston, State of Louisiana. By stipulation and agreement between the parties to the suit, a temporary restraining order was perpetuated and the matter set for trial on the merits for final injunction. Counsel for appellants filed a plea of prescription of ten years under Article 3478 of the Civil Code, LSA, and with full reservation of its rights and answer to plaintiff’s petition. Further answering it set up its chain of title and prayed to be adjudged the lawful owner of the property, all of which had the effect of converting the suit into a petitory action, with appellants as plaintiffs. The appellees thereupon filed a supplemental and amended petition in which they set up the enlarged pleadings by appellants in its answer and its conversion of the suit into a petitory action, and therefore, plead prescription of thirty years as to the property in dispute, under Article 3499 of our Civil Code, LSA.
Trial was had and judgment rendered in favor of the plaintiffs decreeing them to be the owners of the property in dispute and rejecting the demands of the defendants-plaintiffs in the petitory action from which judgment the latter has appealed.
On the 10th day of March, 1883 by Notarial Act before W. H. McClendon Deputy Clerk and Ex Officio Deputy Recorder and Notary Public in and for the Parish of St. Helena, State of Louisiana, Laurence Young and his wife, Nancy Ann Story, donated to their daughter Irene Young, wife of W. 0. Watson, (mother of plaintiffs-appellees) “all their right, title, interest and claim in and to a certain parcel of land situated on or near the dividing line between the parishes of Livingston and St. Helena on the west bank of the river Tickfaw and being a portion of homestead tract of these donors and bounded on the north by lands set apart for Tom Young, on the East by Tickfaw River, on the South by lands this day donated to Fanny Young, wife of Tom Thompson, and on the west by 100 acres of land reserved by this donor and containing 100 acres. The west boundary line to be established as soon as practicable by these donors and the north and south boundaries to be parallel lines, * * together with an additional 40 acres with which we are not concerned in this lawsuit. Mrs. Irene Young Watson in the act relinquished all her right, title and claim in and to the remaining real estate of her said parents in favor of her co-heirs. One of the witnesses to this act of donation was W. P. Young, presumably a co-heir and brother of Mrs. Irene Young Watson and through whom the appellants claim their title.
The evidence in the record establishes beyond any doubt that the Watsons had a survey made by Mr. Womack who established the north and south boundaries of the property between parallel lines, and which boundaries are parallel practically with the north boundary of Headright 47, which is also the south boundary of Headright 48.
In July of 1951 as a result of a dispute between appellees and appellants as to the south boundary line of the Irene Young Watson property, which would be the north line of the appellant’s property, the appellees employed Mr. O. C. Plollister, surveyor of Tangipahoa Parish, Louisiana, to re-run the south boundary line. His survey differed only a few feet from the old Womack line which appellees claim as *864 the correct southern boundary. The map prepared by Hollister as a result of his survey and introduced m evidence is as follows:
[[Image here]]
*865 On the 8th day of March, 1902, Irene Young Watson, mother of appellees, and her mother, Nancy Ann Story, widow of Laurence Young, together with the other co-heirs who are named, conveyed and transferred to Wm. P. Young, brother and co-heir, being the son of Laurence and Nancy Ann Story Young, the following described land situated in the parish of Livingston, “said state in Headright Section 47 TS SR 5E, and more particularly described as follows: commencing at the south east corner of said Section Forty seven TS SR 6E, and the west or right bank of Tickfaw River, thence N. 81 deg. W 64.62 chains to a gum tree thence N. 9 deg. E 20.83 chains to a stake thence South 80 deg. E 62.50 chains to Tickfaw River thence S. 24)4 E 1.76 chains thence S. IS deg. W 3.00 chains thence S 53)4 E 2.00 chs. thence south 34 deg. E 4.S0 chains thence S 74)4 E 4.00 chains thence South 22 E 8.50 chs. thence N 73J4 deg. W 8.S0 chs., thence S 28 W 5.00 chs. thence S 29 E 5.20 chs to the place of beginning according to a survey made Jan. 17, 1902 by Geo. P. Schmidt Surveyor and containing One Hundred Thirty Three 7%oo Acres (133.75) acres. * *
A map of the Schmidt survey, as the Womack survey, was not recorded nor produced on the trial, however, there was introduced the composite map showing surveys by O. C. Hollister to the heirs of Mrs. Irene Y. Watson using the description whereby she acquired the property, supra, and by George P. Schmidt and C. M. Moore using the description whereby Wm. P. Young and his successors in title acquired the property. A reproduction of this composite map will give a clear understanding of the differences in the surveys and the property in dispute. (See following page.)
An examination of the composite map will show that on Hollister’s survey the north boundary line of the appellee’s property inherited from their mother, Mrs. Irene Y. Watson, is north 89 degrees 30 minutes east 65.02 chains. This line is practically parallel according to the Hollis-ter map, supra, with the north line of Headright 47, which is also the south boundary line of Headright 48. From the description in the original deed to Mrs. Irene Young Watson from her father and mother we believe this line to have been correctly run for her property is described as being bounded on the north by “lands set apart for Tom Young * * * ” “and the north and south boundaries to be parallel lines.” The Hollister map, supra, shows 100 acres to the north of the Irene Y. Watson property with the name “Vernon” on it. There is no explanation or evidence with regard to Vernon, however we assume he was the successor in title to the north 100 acres referred to in the deed as being set apart for Tom Young. The north boundary line of this 100 acres is the North line of Headright 47 and the south line of Headright 48. There is no indication in the record nor evidence which would give any reason for running the north line of the Irene Y. Watson property south 80 degrees east, rather than parallel to' the north boundary of the Tom Young property. However, there is no dispute but that if the description set out in the deed from Mrs. Nancy Ann Story Young, widow of Laurence Young, and the children and co-heirs of Laurence Young to Wm. P. Young but that Mrs. Irene Y. Watson transferred the 14 acres marked “blue” on the composite map in the- form of a triangle to her brother. There is .no testimony even up to the date of her death in 1947 that appellee’s mother had any knowledge that in the deed to her brother she had included a part of her own property. There is no testimony that anyone directed Schmidt to survey the property for Wm. P. Young with the north boundary south 80 degrees east and the south boundary south 81 degrees east and we can only surmise that he made a mistake, brought about by his beginning at the southwest corner of Section 47 and thence along the south Headright line which had a bearing of south 81 degrees east, instead of beginning at the bay tree on the southwest corner of the property of Mrs. Irene Y. Watson as established by Womack and
*866 [[Image here]]
using the south boundary lme of the Irene Y. Watson property as the north boundary of the Wm. P. Young property. This would have reduced the 133 acres by 14 acres now in dispute, hoWever, there is no testimony that Wm. P. Young was to have surveyed out exactly 133.75 acres. The Act states that his mother and brother and sisters were carrying out the intent of their father in giving him property as he had given to Mrs. Watson and Tom Young. It would be unreasonable to presume that Laurence Young gave his daughter, Irene Y. Watson her property which was surveyed by Womack and then intended that 14 acres of this property should be taken *867 from her and given to Wm. P. Young. It would be more unreasonable to presume that Mrs. Watson would have or intended to give this fourteen acres to her brother. As can be seen from the map a deletion of the 14 acres from her property would leave it in a very peculiar shape contrary to the express provisions of the description in her act of donation. Regardless of the intention, or lack of knowledge, Mrs. Irene Young Watson divested herself of title to the disputed tract by the act of donation to her brother, Wm. P. Young, under the description contained in the act.
On January 9, 1903 Wm. P. Young sold to Burlin Starns the same 133.75 acres in HR 47 T5 SR 6E which he had acquired by Act of Donation, supra. In 1906 Burlin Starns sold to the Hammond Real Estate Investment Company the West 80 acres, which included the property in dispute. In turn the Hammond Real Estate and Investment Company sold the property to Fred E. Gary and Lucius K. Baker, on January 26, 1907. These vendees in December 1909 sold the property to McCarroll Lumber Company Ltd. who sold to Standard Machine Company Inc. on the 26th day of December, 1923 and by the latter to Henry Starns in 1937, and by the latter to Newton E. Starns in 1941; and by the latter to Gaylord Container Corporation on the 23rd day of March, 1943, who in turn sold to the present appellant.
■In answer to the plea of thirty years acquisitive prescription plead by appellees under Article 3499, LSA-C.C., counsel for appellant counters with the contention that the general rule to the effect that a seller is bound by his warranty; that he may not keep the price and retain the land, that the heirs of said vendor are bound by his warranty, and are estopped to claim land subject to their ancestor’s warranty. Citing Stokes v. Shackleford, 12 La. 170; Grilling v. Taft, 151 La. 442, 91 So. 832; Soule v. West, 185 La. 655, 170 So. 26; Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633; Picou v. Dubois, La.App., 13 So.2d 543.
Counsel for appellant secondly argues that, “the possession of the tract of land by the seller after divesting himself of title is precarious, and cannot form the basis of prescription acqmemdi cawse without acts of possession of an unusually pronounced character which give notice to the title holder that the possessor has changed his precarious possession and inaugurated a new possession.” He cites LSA-C.C., Articles 3489, 3490, 3556, 3441, 3510, 2475 and 2468 and Roe v. Bundy’s Heirs, 45 La.Ann. 398, 12 So. 759; Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369; Moore Planting Co., Ltd. v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22, 35; Winn v. Calhoun, La.App., 94 So.2d 545. Thirdly he argues that “prescription of thirty years Acquirendi Causa is ‘pedis possessio’, and the party’s possession is limited to the enclosed area.” He cites LSA-C.C. Article 3503; Hill v. Richey, 221 La. 402, 59 So.2d 434; Sattler v. Pellichino, La.App., 71 So. 2d 689; Parham v. Maxwell, 222 La. 149, 62 So.2d 255; Southern Advance Bag & Paper Company v. Broomfield, La.App., 73 So.2d 510; Frederick v. Goodbee, 120 La. 783,45 So. 606.
Fourthly, counsel for appellant states in his brief that “The party setting up and relying on adverse possession has the burden of proving it, Liles v. Pitts, 82 So. 735, 156 [145] La. 650.”
Fifthly he contends that “When the land is in the mixed possession of two persons, one of whom is there by title, and the other wrongfully, the one with title is presumed to be in possession to the extent of his right,” citing 2 C.J.S. Adverse Possession § 215, p. 819, § 227, p. 846.
Sixthly, he contends that “Article 3498 provides that: ‘When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits.’ Possession of part of property under title to whole is possession of the whole. Mandel v. McAnn, 16 [La.]App. 125, 133 So. 477 (1931) and many authorities shown under *868 Annotation 2 of West’s Revised Civil Code, Article 3498, Volume 15, page 192.”
Under the facts of this case which will be hereinafter discussed, counsel for appellants “first contention”, supra, is not applicable for Mrs. Irene Young Watson had acquired by thirty years actual open corporeal possession the ownership of the property in dispute prior to her death in 1947.
As to counsel’s second contention, supra, this court in the case of Wait v. Pearson, La.App., 88 So.2d 43, 48, had occasion to consider the very question now before the court in the case at bar. We cited and relied upon many of the authorities which counsel for appellant has cited to the court in this case, supra. The facts in the case at bar in the main are on all fours with the cited case, in that, Wm. P. Young, evidently went in possession of part of the property sold and Mrs. Irene Young Watson retained the possession of the disputed part. In the cited case, Judge Tate as the organ of this court, after a thorough discussion of the law and an exhaustive citation of authorities pertaining thereto held:
“But it may be noted that all of these cases with one exception (noted below) concern the situation where the vendor, despite the recorded sale to the purchaser, remains in physical possession of the entire tract of land sold. In such instances, such unexplained continued physical retention of the property sold gives rise (as the cases cited indicate) to a presumption that the continued possession by the vendor is for the benefit of the purchaser. This legal presumption might be explained in terms of the probabilities of human nature. It would be extremely unusual behavior for a purchaser who has bought and paid for some property to permit without protest his seller to retain possession thereof under a claim adverse to the purchaser’s.
“However, in the present instance, as in Louisiana Highway Commission v. Raxsdaie, La.App., 12 So.2d 631, the purchaser went into possession of part of the property sold and the vendor retained possession of another part. In this cited case, without discussion, the Court held that the continued possession per se by the vendor was adverse to the purchaser.
“After serious reflection, we think that under the circumstances of the Raxsdale and the instant cases, where the purchaser goes into possession of only part of the contiguous property purchased, then a presumption does not arise that the unexplained continued possession by the vendor of the other part of the property is for the benefit of the purchaser and is not adverse thereto.
“For it would be unusual behavior for a purchaser to take possession of only part of the contiguous property purchased. In the absence of explanation, it may be presumed that the purchaser took possession of all the property he thought he had purchased, and that the seller retained possession of property he thought he had not sold. The seller therefore possesses as owner, and such adverse possession for the requisite period of time would confer ownership by prescriptive title, even against his own purchaser; See Roe v. Bundy’s Heirs, 45 La.Ann. 398, at page 404, 12 So. 759, at page 761, quoted in footnote 4 above.”
In the case at bar the facts reveal that the retention of possession by appel-lee’s mother was so pronounced that the people in the community or neighborhood, as well as the contiguous owners, knew that she regarded and claimed the property in dispute as owner under her title or act of donation from her mother and father which was passed in 1883 or nineteen years before she signed the act of donation along with her mother and other co-heirs to her brother Wm. P. Young. It must also be remembered that this act of donation was to carry out a gift by the father prior to his *869 death and it would be most unreasonable to deduce that the latter intended to infringe in any manner upon the property which he and his wife had donated to ap-pellee’s mother. The record conclusively shows that from 1883 until the date of her death in 1947, Mrs. Irene Young Watson, mother of appellees, with the aid and assistance of two of her sons, exercised close supervision and possession over the disputed property. The property was surveyed in approximately 1891 by Womack and two of the corner trees stood for many, many years, and there was enough of the old bay tree which marked one of the corners still standing at the date of the trial that a part of the “X” could still be seen identifying it with the corner. This survey remained the only one until the alleged Schmidt survey in 1902. It is further shown that there was an old rail fence built on the line of the Womack survey west from the river to an old road that crossed the property. A witness who was 65 years of age at the date of the trial in 1957 testified that he was certain this fence was there in 1902, and that he had left the community when he went to the “First World War” but had been back on vacations and fishing trips and “That fence remained there for years until the rails deteriorated away.” He also stated that he had climbed it many times “crossing there going fishing.” He further stated in referring to the fence, “It came to the old public road, nearly to the old public road, then turned south to the old house spot on the Starns’ property.” The testimony further shows that at one time after a survey by Mr. Moore which was approximately in the year 1909, as the testimony shows that the McCarroll Lumber Company owned the 80 acres lying to the west of the property retained by the Starns, and were cutting the timber and for that reason Starns had Moore to survey the property to see that they didn’t cut over his line. We believe this is the only survey that Moore actually made of this property although the testimony is misleading in that witnesses were questioned about Mr. Moore’s survey of 1943 in connection with a map showing that date introduced as a result of his alleged survey. The map plainly shows on its face that it was prepared from Old Township plats and later surveys, by which Moore must have meant earlier surveys. Some of the distances on the map plainly show that they were calculated as the word “cal.” is used. However, we accept the map as correctly following the Schmidt survey as shown by the description given in the act of donation to Wm. P. Young in 1902. During the time that Newton Starns was the owner of the property and he acquired it in 1941 and sold it in 1943 he started to build a fence, according to the witnesses, along the Moore survey, and the Watsons protested and Burlin Starns, who originally acquired the property from Wm. P. Young, and was the father of Newton Starns, was present and stated that the Watsons were correct, and the Womack line was the line when he bought the property from- Wm-. P. Young, and accordingly the fence was removed. The only other deliberate trespass shown in the testimony was the witness Foster who had purchased timber from Gaylord Container Corporation and had cut some north of the Womack line and the Watsons stopped him and showed him the proper line whereupon he paid the Watsons for the timber and left their property. We also have offered in evidence an act of timber sale from Mrs. Irene Watson to Natal-bany Lumber Co. Ltd. filed in the Clerk’s Office of St. Helena Parish at Conveyance Book 24 page 81 dated April 19, 1927 covering the property in question; also introduced in evidence is a timber deed from Mrs. Irene Watson to W. B. Coney covering the land in dispute of date May 16, 1936. Introduced is another timber deed from Mrs. Irene Young Watson to Clemons Brothers covering all the timber of every kind and description measuring 12 inches in diameter and up at the stump, lying, standing or being on the property of vendor, which covered that in dispute, of date Oct. 18, 1946. The record therefore shows an open and notorious possession to the Wo-mack survey line on the south of the Wat *870 son property, along which a fence stood for many, many years and in addition today there is a wire fence on this old line which was built to the east side of the old public road. While there is testimony that there was a portion of fence on the west side, most of the testimony shows that there was no fence to the west side of the old public road but the Womack survey was plainly visible in 1902 and the Watsons did not depend on this entirely for it is evident that no one attempted to go north of this line because of the common knowledge that it was the line, other than Foster, Newton Starns, and the last disturbance by the appellants which brought about this law suit. The Watsons kept a close watch and no trespasser escaped for any length of time, therefore, under the specific facts of this case under our holding in the Pearson case, the unexplained continued possession by Mrs. Irene Young Watson did not give rise to a presumption of such possession to the benefit of her donee, Wm. P. Young. In the case at bar, Mrs. Irene Young Watson retained open and unequivocal possession of that part of the property which is now in dispute and up to the visible boundary made by Womack, the surveyor, in 1891, and which was still visible. Mrs. Irene Young Watson, and her heirs, appellees herein, have done more than just depend on the visible boundary line by constantly and at frequent intervals guarding the property against trespass and notifying contiguous owners at every opportunity that they claim all property to the Womack line. We believe that in accordance with our holding in the Wait v. Pearson case, supra, that no presumption arose that the unexplained continued possession by Mrs. Irene Young Watson of that part of the property in dispute was for the benefit of the purchaser and was not adverse as Wm. P. Young from the evidence was never in possession of the property in dispute for Mrs. Watson openly retained possession and actively defended it to the Womack line up until her death in 1947. Therefore, disregarding her open and actual possession from 1883 to 1902, when the act of donation to her brother was executed, she still had exercised open, notorious and adverse possession of the property in dispute for 45 years prior to her death, which satisfied the requirements for acquisitive prescription under Article 3499, LSA-C.C. by an added fifteen years.
As to appellant’s third contention that a party’s possession is limited to the enclosed area, and under which he cites many cases, including Hill v. Richey, supra, the Womack survey with its plainly marked corner trees and lines, together with the constant open possession publicized by appellees as being to the Womack line and the acquiescence therein by all prior owners, for more than thirty years satisfied all the requirements of the law and jurisprudence.
As to appellant’s fourth contention, the appellees have proven more than thirty years open, notorious and adverse possession of the property in dispute. Of course, the burden is upon the appellants to recover on the strength of their own title.
As to the fifth contention the land was not in mixed possession of two persons, for the record sustains the contentions of ap-pellees that they were continuously in open and adverse possession from 1883 without any dispute, until approximately 1951.
As to appellant’s sixth contention, that when it acquired a title and possession of the 1,063 acres in 1943 and possessed a part of the property under that title that this constitutes possession of the whole, we are, of course, in entire accord that this is sound law under the proper facts. This has no application under the facts in the present case for the disputed property was actually in the open, notorious and adverse possession of the appellees, and there is no evidence that their predecessors in title claimed or ever exercised possession of the disputed property. In addition, title to the disputed property had become fixed by thirty years actual, open and notorious possession in Mrs. Irene Young Watson, *871 ten or eleven years prior to the alleged acquisition by appellants herein.
Counsel has cited many cases 'which he contends are controlling herein. They are controlling only insofar as their facts are similar to the case at bar. For example, in the case of Sattler v. Pellichino, supra, he states that this court has ruled that the adverse possessor must prove that the fence was maintained and constituted a visible boundary for more than thirty years, and that as the old rail fence in the present case which is located on the Wo-mack had rotted down and there was no fence west of the road, that Appellees could not recover. In the case cited, the defendant relied completely upon a barbed wire fence that went crookedly from tree to tree and nothing else. The facts showed that this fence had completely disappeared except for a few short strands or ends protruding from several pine trees, and that in order to find these it took a close and deliberate inspection. We had no survey and no; continued supervision and publication orally as in the case at bar. We did hold in the cited case, however, that an heir could tack to the possession of his deceased parent or parents, which is not necessary in this case for the reason that title became vested in the appellees’ mother prior to her death by open, notorious and adverse possession for more than thirty years during her lifetime.
The public road or old road referred to throughout the testimony in this case was never located by any competent evidence, as not one single surveyor has testified. All maps were apparently introduced without any objection. On a motion for a rehearing counsel for appellants attempted to introduce a map in which it was alleged that Mr. C. M. Moore had properly located this old road, however the lower court refused its admission, and counsel annexed it to a bill of exception. The ruling of the lower court in refusing the introduction of this evidence on the motion for rehearing was correct, and even if there had been a motion for new trial, the court’s refusal would not have been disturbed, for all counsel had an oppoi'tunity to prove the location of the old road or highway. Secondly, counsel apparently wished this proof in the record for the purpose of his alternative plea that as no fence existed to the west of this road, only that property to the east should be awarded in any event to the appellees. There is no merit in such contention, under the facts.
For the above and foregoing reason the judgment of the district court is affirmed, and appellant’s suit dismissed at its costs.