JOHNSON, Judge.
The two plaintiffs filed this petitory action jointly claiming to be owners of 4,484 acres of land near Lafitte, Jefferson Parish, Louisiana, by virtue of thirty years adverse possession. The Twenty-Fourth Judicial District Court rendered judgment in favor of defendants, decreeing R. C. Milling and the successors of Madison Realty Co., Inc., the lawful owners of said property. Plaintiffs have appealed.
Plaintiffs’ petition was filed October 13, 1953, alleging plaintiffs to be the owners of the following described property:
IN TOWNSHIP 16 SOUTH, RANGE 23 EAST:
Section 6 — All.
“ 26• — That portion lying west of Bayou Dupont
" 35 — Fr. NE14 of NW1/4; Fr. SW}4 of NE14; Fr. SE>4; NW¡4 of NW14; E14 of SW14; and SE14 of NW14.
“ 36 — Lot 8.
IN TOWNSPIIP 17 SOUTH, RANGE 23 EAST:
Section 1 — That part of Wy2 lying west of Dupre Cut
“ 2 — E^4 of WJ¿; and Ei/2.
“ 11 — of NW14; SWJ4; and Ei/2.
“ 12 — wy2.
“ 13 — NWJ4 and Sy2.
“ 14 — Ei^ of SE14; Wi/2 of SEJ4 ; W2 of SW!4; and N^.
“ 23 — NEi^.
“ 24 — m/2.
IN TOWNSHIP 17 SOUTH, RANGE 24 EAST:
Section 18 — That part of Sy of N14, and and the Sy¡, lying west of Dupre Cut.
Section 19 — That part of Ni/£ lying west of Dupre Cut.
The petition further alleges that plaintiffs became the owners “ * * * by virtue of their continuous, uninterrupted, actual, physical, corporeal and adverse possession of the said property; ” that for a period in excess of thirty years plaintiffs trapped, improved, lived upon and possessed as owners the said property since prior to 1920.
The defendants first filed an exception of no right and an exception of no cause of action. Testimony was taken in support of *821 the exception of no right of action. The trial Court overruled the exception of no cause of action, maintained the exception of no right of action and dismissed the suit. On appeal to this Court the dismissal was affirmed. La.App., 83 So.2d 143. The Supreme Court reversed the dismissal and remanded the case to be tried on the merits. 231 La. 704, 92 So.2d 589.
The Madison Realty Co., Inc., was dissolved and by Court order dated December 21, 1956, James S. Webb, Clifford G. Webb, Mrs. Emma Gertrude Webb Smith, James S. Webb, Jr., and Mrs. Dorothy Haller were named defendants as successors to Madison Realty Co., Inc.
The defendants denied in their answer all of the allegations of the petition and alleged that at all times in question they and their predecessors have had full ownership and possession of all of the property described in plaintiffs’ petition; that their possession has been judicially confirmed and quieted by the judgment of October 13, 1952, (in suit No. 21 280), of said District Court, by which plaintiffs herein were enjoined from disturbing or interfering with possession of said property by these defendants, which judgment has the force of res judicata; that by authentic act dated March 19, 1940, plaintiff, Michel G. Wischer, and all other descendants of Benedict M. Wischer, entered into a compromise settlement with said defendants herein for a valuable consideration whereby the said Wischers conveyed all their interest in said property to defendants and warranted that George Per-tuit did not possess any of said property as owner; that said compromise has been of record for more than sixteen years and cannot now be collaterally attacked; that because of said settlement and conveyance to defendants, by all the heirs of Benedict M. Wischer, said Michel G. Wischer is now estopped from asserting any title to said property; that the said compromise and conveyance to the defendants had the force of res judicata; that plaintiff, George Per-tuit, by his suit No. 14 522 of the Twenty-Fourth Judicial District Court, against defendant, Madison Realty Co., Inc., claiming damages for alleged destruction of a house, judicially confessed and testified that he did not claim to possess any property as owner but that his possession was with the permission of Benedict M. Wischer, an ancestor of co-plaintiff, Michel G. Wischer, which made George Pertuit a precarious possessor and that such pleadings and testimony constituted judicial confessions; that said George Pertuit was thereby estopped from obtaining any recovery herein; that the said plaintiffs by their signed affidavits in that suit declared that they did not possess any of said property as owners. The said defendants then delineated their complete chain of title to all of the subject property from the United States to said defendants and alleged that for more than thirty years, in addition to their recorded fee title, they have occupied and used all of said property, all of which allegations of said answer they plead in bar of plaintiffs’ action.
The record in this case consists of twelve large volumes of a total of 2715 pages. There are one volume of pleadings, five volumes of testimony and six volumes of exhibits. Numerous witnesses testified on both sides. The property in question is described as strictly marsh land, entirely unusable for cultivation and suited only for fishing and trapping muskrats except for two narrow slightly elevated ridges running through a portion of the land on which there is some game, such as squirrels and rabbits. Plaintiffs claim to have exercised their alleged possession by living upon the land, raising a garden, chickens and ducks and trapping fur-bearing animals. Throughout that period the defendants have paid all of the taxes, occupied and conducted trapping operations by employees, leased to others numerous sites on which their tenants built camps along the bayous and ridges for hunting, fishing and trapping, granted mineral leases to the Texas Company which drilled some producing oil wells and which company constructed two pipe lines across the property.
*822 There have been several suits involving this property between the plaintiffs and defendants. In 1938 these plaintiffs were operating some trapping lines which conflicted with the area to which defendants had granted leases to others and because of Some interference by plaintiffs with defendants’ tenants and permittees, the defendants herein brought an injunction suit, No. 13 397, in February, 1939, against the plaintiffs herein and one Freddie Wischer, a brother of Michel G. Wischer, to enjoin them from such interference. The Court enjoined the plaintiffs herein from going upon and interfering with the possession of defendants and their tenants and employees, confirmed defendants’ title and quieted defendants in their possession of the property. As a result of that litigation, defendants herein (plaintiffs in that injunction suit) entered into a compromise settlement with Michel W. Wischer and all of the Wischer family, descendants of Benedict M. Wischer, who, originally, about the turn of the century, it is said, claimed to be the owner of the property, or at least a part of it. By this compromise the entire Wischer family executed a deed of conveyance and quitclaim to defendants herein, selling and conveying to defendants as owners any and all their right, title and interest in said property. The consideration was some cash and as a further consideration the defendants transferred to Michel G. Wischer and all the other descendants of Benedict M. Wischer, a fractional mineral interest in a portion of said property. As a result of this compromise the Texas Oil Company paid those parties their proportionate amounts of mineral production over a period of years. In this act of compromise the Wischers warranted to defendants that George Pertuit had no ownership interest in any of the land and improvements and that he claimed none at that time. This compromise and conveyance was consummated on March 19, 1940.
On or about September 13, 1940, Tom Smith, an employee of Madison Realty Co., ■Inc., on defendants’ instructions, demolished an old camp which had been built by Benedict M. Wischer, and in which George Pertuit camped when he got permission from Ben Wischer to go upon the property. This building was described as being a small, flat-topped cabin of two small rooms. Smith testified that the cabin was torn down because it was included in the compromise of March 19, 1940, and all of the lumber of any salvage value was moved and he then-burned the rotten pieces. Defendants had a perfect right to do that.
On January 3, 1941, George Pertuit brought suit No. 14 S22 against Madison-Realty Co., Inc., for $4,013.15, being his-estimate of the value of the cabin and some personal property, such as a dilapidated iron bed and mattress, a wood burning-stove, chairs and including a 3" x 5" unframed kodak picture of his father tacked on the wall. Pertuit listed the kodak picture as a “portrait” and gave it a value in. his suit of $1,000.00.
By that suit George Pertuit claimed that he had possessed the SE}4 of the NEJ4 of Section 11 for the past eighteen years; that Benedict W. Wischer was the owner of that land and building and had given him permission to occupy it on the agreement that Pertuit would maintain the camp, keep the ditches open, use the land for trapping, for all of which the said Benedict W. Wischer agreed to pay Pertuit, but he said payment was never made; that Pertuit occupied that camp until September 13, 1940, when he was forceably evicted by Tom Smith, who demolished and burned the cabin. The last time that suit was set for trial was September 25, 1946. There were no further steps in the prosecution of that suit and it was dismissed as abandoned on motion of defendant by judgment of October 31, 1951.
The testimony shows that after the compromise settlement of March, 1940, Michel G. Wischer and George Pertuit both left the property, lived and worked elsewhere until about 1948. Michel G. Wischer testified on March 19, 1945, in a deposition in *823 George Pertuit’s suit, No. 14 522, that he was living then at 1547 Huey P. Long Avenue in the City of Gretna, Louisiana; that he first went to Bayou Gold on subject property to live in a camp with Pertuit in 1929 or 1930, and that he lived out there pretty regularly after that time; that he •did not know what date he quit living there because he would have to look at the contract of compromise settlement to see what date he made the settlement, as that was the last day that he lived on the subject property.
In that same suit, No. 14 522, George Per-tuit testified on February 19, 1945, that when Benedict Wischer gave him permission to live in his camp on Bayou Gold he thought Benedict owned the property; that after old man Ben died in 1930, some of his boys said that they were claiming the property and he (Pertuit) told them he was glad to see them get the land; that all he wanted was a place to stay; that he did not stay there regularly; that from time to time he would go out and work a job for four or five months and then go back there, but after 1928 or 1929, he stayed there pretty regularly until September 13, 1940, when his camp was demolished and he was evicted. At one time, since then, he worked two years for the United States Port of Embarkation and Todd-Johnson Co., during which time he lived at 4523 Tchoupitoulas Street in New Orleans, and at the time of giving this testimony in 1945 he said he still lived there. A letter dated August 7, 1942, written by the Louisiana Collector of Revenue, filed in evidence, certified that an automobile license was issued to George Pertuit at his address at 4523 Tchoupi-toulas Street, New Orleans. Also filed in evidence in that case is an affidavit of the owner and landlord of the premises at 4523 Tchoupitoulas Street which states that George Pertuit lived there from 1941 until October, 1945. Pertuit said that he did not go to Court in the suit in 1939 (No. 13 397) because he thought it was Wischer’s fight; that Wischer was fighting for the title and he did not have anything to do with it. In 1940, Wischer told him they had settled the suit, had sold out and were moving off. Both plaintiffs did move off at that time.
Then, in 1948, Pertuit and Wischer buiit a little palmetto hut on Bayou Gold near the original camp site and they set out some traps. Information of their interference with some of defendants’ trappers and tenants resulted in a suit filed August 18, 1948, by these defendants, No. 21 280, against Pertuit and Wischer, being a pos-sessory action. Both George Pertuit and Michel G. Wischer were cited and served personally in that suit. Pertuit was served and cited on August 23, and Wischer was served and cited on August 24, 1948.
On September 1, 1948, by written motion and order two attorneys had their names entered as counsel of record to represent defendant, George Pertuit. On September 27, 1948, counsel for George Pertuit filed an exception and answer to the rule for a preliminary injunction. A number of affidavits were filed on behalf of George Per-tuit in that matter. One of the attorneys signed as attorney for George Pertuit in his answer and the other one signed the verification of the answer as the notary public. The rule for an injunction was made returnable September 1, 1948, and later continued to October 15, 1948. When the rule came up for trial on October 15, 1948, one of the attorneys was in Court as attorney for George Pertuit. He objected to going to trial on the grounds that he had not been notified of the date of trial as the rules required and that George Pertuit was not present. This counsel moved that he be permitted to withdraw as counsel for George Pertuit and also moved that a continuance be granted. The Court denied the continuance. There is filed at page 2418 of the record copies of notices issued by the clerk dated October 5, 1948, to both counsel for defendant George Pertuit, and served by the sheriff on October 6, 1948, on each counsel personally notifying them that the injunction suit was fixed for trial for Friday, October 15th, 1948. After trial, the Court granted a preliminary injunction en *824 joining Michel Wischer and George Pertuit and each of them from entering upon any of the premises of defendants and from interfering in any manner with the full and quiet possession, occupancy, use and control by Madison Realty Co., Inc., and R. C. Milling of said property. On October 20, 1948, after issuance of the preliminary injunction, one of Pertuit’s counsel filed an answer to the suit on the merits. Wischer made no appearance and preliminary default was entered as to him. The injunction was made permanent by judgment on October 13, 1952.
In this connection, plaintiffs’ present counsel argues that for the reason that Pertuit was not in Court on the morning of October 15, 1948, and his counsel had not been notified, the judgment cannot have the weight of res judicata. There is absolutely no merit to that argument. Counsel is mistaken. Pertuit’s counsel in that suit had participated in a portion of the trial on September 27, 1948, and was notified in writing of resumption and completion of the trial for preliminary injunction for October 15, 1948. Besides that, one of Pertuit’s counsel in that suit continued to be active in that case and participated in the trial on the merits for permanent injunction which judgment was rendered on October 13, 1952.
There was no appeal from the judgment of October 13, 1952, enjoining these plaintiffs from going upon the land and from interfering with the possession of these defendants and quieting defendants in their possession of the property, but evidently these plaintiffs did not obey that injunction. They were cited for contempt at least once but defendants herein did not prosecute the contempt proceedings on the promise of these plaintiffs to the Court that they would cease their operations and leave the property, which apparently they did. This present suit by them was filed on October 13, 1953, claiming ownership of the whole property by adverse possession.
This suit has been before this and the Supreme Court twice but not on the merits until now. La.App., 83 So.2d 143; 231 La. 704, 92 So.2d 589; La.App., 128 So.2d 72; 242 La. 334, 136 So.2d 62.
In this suit, on May 1, 1957, a discovery deposition of plaintiff, George Pertuit was. taken. He said again as in his deposition in 1945 in a previous suit that Ben Wischer put him on this land in charge of it in 1921 and that Ben Wischer was always going to> pay him but Wischer never did and then Wischer died in 1930. His testimony on the trial of the case said that he first went on the land in 1922 or 1923. He was asked when it was that he and Michel G. Wischer decided to claim title to the land. His answer was that he made his decision after Tom Smith “burned and destroyed” his camp (that was about September 13, 1940), but he did not know anything about when Wischer made that decision. In this discovery deposition of May 1, 1957, he said he was not claiming the property occupied by the Little Lake Club nor the oil field. He named about five camp locations which he did not claim to own and thought there were about fifteen hundred acres in the tract which he claimed as owner, though he made no effort to accurately describe by known and designated boundaries the land he had possessed and did not attempt to separate the portions he claimed from those other portions belonging to these defendants which he did not claim. He testified that Ben Wischer told him that he owned the land from the big palm tree, which Wischer said he had planted in 1900 on Bayou Gold, and used as a key to the location. He said Wischer “told him that he owned as far as he could see that way and as far as he could see that way” meaning north and south.
In his lengthy testimony on the trial of this present case, this plaintiff attempted to repudiate some of the testimony given in that discovery deposition which repudiation was an apparent effort to correct or bolster his position of alleged ownership. The trial Judge frankly said that he did not believe the testimony given at the trial and we agree that said plaintiff’s credibility was without value or weight.
*825 Plaintiff, Michel G. Wischer, also testified -in a discovery deposition in this case on March 27, 1957. He said he was then living on Huey P. Long Avenue in Gretna, was living there in 1945 and had been living there ever since. (Wischer left the land in 1940, went back on it in 1948 and left again finally in 1951). This plaintiff describes the land he claims by this suit as being on the west side of Bayou Dupont and Bayou Du-pree, extending north from the island to a little below the ridge or coteau, approximately four miles. The generalization of this description is so vague as to serve nothing in support of ownership by adverse possession. He said he did not claim the Little Lake Club area because he had an understanding with Mr. Spencer (presumably the late attorney, Walker Spencer) ■and Judge Borah that “we” would leave their ducks alone and they would leave us alone in a couple of hundred places. He -also named some camp sites on defendants’ land that he did not claim. He said there is a possibility that he would claim the oil field but right at the time he was giving his -deposition he did not claim it. He said Bayou Rigolets was the western boundary except from the line drawn by Barataría Land Company and as far the land between -the line and the Bayou, right then he claimed it to the Bayou, because he would have to ■claim it to the Bayou as a boundary (it is understood that this land between Bara--taria Land Company line and Bayou Rigo-lets is not a part of defendants’ property).
We refer to this bit of testimony by Wischer in his deposition to demonstrate the complete lack of positive identification ■of the land claimed. Wischer’s testimony ■on the trial of the case was in many parts in complete contradiction of what he said in his deposition, that is, where any definite answer could be elicited, which was the exception rather than the rule. The ■ author of this discussion states for himself, without speaking for the Court in this particular, that I do not recall ever having read the testimony of any witness in any -case quite so evasive, vague, contradictory in many parts, or so plainly unbelievable as the testimony, depositions and affidavits of. Mr. Wischer given and in evidence in this case.
Plaintiffs called a number of witnesses, some of whom testified that they had seen these plaintiffs on the property of defendants on many occasions, some of them more often than others, some of them over short periods of time and some of them over longer periods of time, but not one single witness gave any testimony that either one of these plaintiffs had ever in their hearing evidenced or expressed the slightest idea or intention of claiming possession of this property as owners.
Wischer indulged in an annoying practice of parrying many questions which sought to elicit definite answers to pertinent points. His apparent purpose was to give himself time to think of something noncommittal or to change the subj ect. Unlike his testimony in previous depositions in prior suits, when he readily recognized his signatures on various checks and documents, on the witness stand on the trial of this case he would not admit his own signature when it appeared not to be to his advantage to do so, particularly on endorsement of checks given him for the very mineral interest he received as part of the consideration in the settlement he made with these defendants in 1940, and his signature when registering to vote as a resident of the City of Gretna in several years of the period in question and complained that the registration was erroneous. In this deposition, given March 13, 1945, he spoke somewhat lightly about that settlement in 1940 to make it appear that he merely sold some things that belonged to him located on the land. He said he was discharged from the army in 1928 or 1929 and that it had to be after that when he went to live on this land. Yet, on the trial of this case he maintained steadfastly that he occupied the land without interruption for thirty years prior to October 13, 1953. Actually, he was only sixteen years old in 1923, having been born in 1907. LSA- *826 Civil Code Article, art. 3439 provides that children are incapable of exercising a will and cannot acquire for themselves the possession of a thing.
As a brief and shining example of the total undependability of the proof on behalf of plaintiffs in this case, Joseph Charles Wischer testified that he first went to the subject property with his brother, one of the plaintiffs herein, in 1926. That could not be true for the reason that plaintiff, Wischer, testified in 1945 in connection with Pertuit’s damage suit No. 14522, that he was in the army until 1928 or 1929, and the first time he went to this property to live was in 1929 or 1930.
As evidence of their exercise of possession and ownership, plaintiff, Wischer, testified in this case that he and plaintiff, Pertuit, gave Arthur Williams, of the Welcome Gun and Rod Club, permits to hunt on this land in exchange for a boat. Williams was not called as a witness.
These plaintiffs occupy the anomalous position of each claiming the full ownership by the language of their joint petition. If the evidence indicated some honesty of purpose, which it does not, we cannot apply the principle that where more than one person purchases property by the same deed without specifying the proportion acquired by each, it is a presumption of law that their ownership of the property acquired is equal, for the reasons, first, that Pertuit says he started his possession alone, sometimes he said in 1921 and other places he said 1922 and 1923, and, second, Wischer gave various dates to start his occupancy from 1922 to 1930, and there is no evidence that there was ever any understanding or discussion about what their respective interests would be. In their testimony, Pertuit still maintained that he claimed the whole thing for himself, while Wischer indicated that they claimed the land between them fifty per cent to each. Their testimony is in utter discord as to what exact land each is claiming.
In 1938 Pertuit made an affidavit that he first used three hundred twenty acres of land with the permission of Ben Wischer. His petition in this suit claims the whole of 4,484 acres, but his 1957 deposition in this suit says that he thinks his claim covers about 1500 acres. When asked about how and when he extended his dominion, he said in his deposition of 1957 “I gradually took it.”
The evidence in this case on behalf of plaintiffs falls far short oí that which is strictly required under our law in order to divest by adverse possession an owner of that which belongs to him, and the record is so voluminous that to make detailed reference to all the evidence would extend this discussion beyond reason. Therefore, we restrict reference to the salient facts and most noticeable defects in the proof relied on by plaintiffs to establish adverse possession.
The question may be asked why the defendants permitted this situation to develop into a controversy of this magnitude in the time they have owned the land. A succinct answer may be found when one understands the type and location of this land, its inaccessibility, its limited usability. After a study of the testimony and record we cannot escape the definite conclusion that these plaintiffs have occupied and used parts of this land, but far from all of it, from time to time over the years purely and simply as, and nothing more than, trespassers, squatters, unlawful usurpers and gradual encroachers by stealth. It is conceivable that a person could reside in such a vast marsh area for quite a time without being detected or disturbed. This accounts for the fact that for several years up to 1938, when the first suit in this series of litigation was filed, these plaintiffs- became ensconced in this remote territory until they began to feel secure in their encroachment and extended their activity, which resulted in the possessory action of these defendants against plaintiffs in 1938.
*827 George Pertuit says that he thought Ben Wischer owned the land when Wischer put Pertuit on it to look after it. Pertuit went there as the agent of Ben Wischer, according to Pertuit, Plaintiff, Michel Wischer, said he went there with the permission of Pertuit. Just how long their precarious status continued is difficult to say, but certainly there is no evidence that in the inception of their activity on the land they were claiming to be the owners, the first essential element of adverse possession.
It is our opinion also that the compromise settlement made by the Wischer family in 1940 by which they conveyed and quit-claimed any and all right, title and interest in this land to defendants herein constitutes the law as between plaintiff Wischer and defendants and has the force of res judicata.
We are also of the opinion that the citations in defendants’ injunction action against these plaintiffs in 1948 constituted an additional interruption, and that the judgment of permanent injunction on October 13, 1952, quieting defendants’ possession had the force of res judicata as between these parties and definitely interrupted any prescriptive possession which they might have otherwise had. LSA-Civil Code, arts. 2285-2287, 3517.
We take the liberty of copying a part of the syllabus of the brief of counsel for defendants. It sets forth concisely several pertinent points with citation of applicable authorities, as follows:
“In this petitory action, the plaintiffs must recover, if at all, on the strength of their own alleged title.
Wischer v. Madison Realty Co., 231 La. 704, 92 So.2d 589.
“Plaintiffs, claiming a thirty-year prescriptive title, have the burden of showing that they had actual possession which began and continued, without interruption, as owners and adverse to the true owners, and that such possession was public, peaceful and unequivocal.
LSA-C.C. Arts. 3436, 3487, 3491, 3500, 3505 and 3516-18; Dew v. Hammett, 150 La. 1094, 91 So. 523; Meridian Land & Mineral Corp. v. Bagents, 211 La. 627, 30 So.2d 563; Albert Hanson Lbr. Co. v. Baldwin Lbr. Co., 126 La. 347, 52 So. 537; Texas Co. v. Theriot, 172 La. 662, 135 So. 17; Matthews v. Carter [La.App.], 138 So.2d 205.
“Precarious possessors, who occupy with the permission of another, can never prescribe.
LSA-C.C. Arts. 3441, 3446, 3488-90, 3510 and 3514; Cortinas v. Peters, 224 La. 9, 68 So.2d 739; Whitney National Bank v. Munch [La.App.], 91 So.2d 144; Jones v. Gaylord Container Corp. [La.App.], 86 So.2d 721; Holmes v. Wyatt Lbr. Co. [La.App.], 139 So.2d 96.
“Where the defendants have had actual possession and protected same by a prior possessory action, duly reduced to judgment, and have ejected the plaintiffs from the property, such actual possession of the defendants and their natural and legal interruptions of any possible prescription which might run in plaintiffs’ favor, prevent plaintiffs from establishing any prescriptive title.
LSA-C.C. Arts. 3517 and 3518; LSA-R.S. 9:5801; Miller v. Albert Hanson Lbr. Co., 134 La. 225, 63 So. 883; Lawrence v. Young, 144 La. 1, 80 So. 18.
“A plaintiff who has previously, in a compromise, conveyed to the defendants such possessory rights as he and his ancestors may have had, may not again assert such alleged possessory rights against the defendants.
LSA-C.C. Arts. 3078, 3493 and 3494; Tremont Lbr. Co. v. Powers & *828 Critchett Lbr. Co., 173 La. 937, 139 So. 12.”
Counsel for plaintiff in his brief cites numerous authorities which define and discuss the thirty-year prescriptive title to land. These authorities do say what is in truth the law of this state, but they are not applicable here for the simple reason that the facts in this case do not fit those authorities. The testimony of plaintiffs alone is enough to defeat their claim. Briefly, they did not commence their possession, whenever it was, with any intention of possession and ownership adverse to the record owners. Their present claim of ownership was plainly an afterthought, conceived when it became obvious that defendants meant to put them off the property. Their possession was not continuous and uninterrupted. They admitted they left the property after the 1940 compromise settlement and lived and worked elsewhere for at least six or seven years in one stretch. Plaintiff Wischer, for sure, is bound by that settlement and he cannot now withdraw from it. As stated above herein, they were both cited in August 1948 in an action in law in which their possession was challenged and which suit resulted in a judgment quieting defendants in their possession and enjoining plaintiffs from going upon the property, which citations were themselves a legal interruption of the running of prescription. Their suit herein claims 4,484 acres, but their testimony excludes great portions of that land from their claim and their alleged areas of operations are so general and indefinite that it is impossible to delineate them and plaintiffs made no attempt to do so. These are just a few of the many reasons why their authorities do not establish their claim of ownership.
On some of these points see: Long v. Chailan, 196 La. 380, 199 So. 222; Parham v. Maxwell, 222 La. 149, 62 So.2d 255; Buckley v. Dumond, La.App., 156 So. 784.
While we have no desire or intention to attempt to soften the effect of this decision on the losers, we do feel impelled to commend counsel for both sides for their thorough preparation of this case for trial and for their orderly, intellectual handling of the trial of the case. Their presentation of their arguments and issues in their briefs have been of great assistance to this Court.
For these reasons, the judgment appealed' from is affirmed. The plaintiffs to pay all costs.
Affirmed.