331 So.2d 201 (1976)
Lynwood Logan VALLEE, Plaintiff-Appellee,
v.
Pearl Hughes RICHARDSON et al., Defendants-Appellants.
No. 5409.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Rehearing Denied May 21, 1976.
*202 Polk, Foote, Randolph, Percy & Ledbetter by Edward G. Randolph, Alexandria, for defendants-appellants.
Law Offices of W. T. McCain by Robert L. Kennedy, Colfax, and Charles B. Bice, Winnfield, for plaintiff-appellee.
Before WATSON, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
Plaintiff, Lynwood Logan Vallee, filed a possessory action seeking to be restored to the possession of a 20.75 acre tract of land situated in SE/4 of NE/4 Section 35, Township 7 North, Range 4 West.[1] Plaintiff in addition sought the recovery of damages allegedly sustained as a result of the disturbance of his possession. Defendants, the widow and heirs of Amos Richardson, answered the petition generally denying the allegations thereof and filed a reconventional demand asserting title in themselves to the land in dispute. Plaintiff, as defendant in reconvention, filed a general denial to the reconventional demand, and in the alternative asserted his acquisition of the property by the prescription of thirty years.
The trial court found for plaintiff rejecting defendants' demand in reconvention determining that defendants failed to make out their title to the property in dispute. The trial court rejected plaintiff's demand for damages. Defendant thereafter perfected this appeal. Plaintiff has neither appealed nor filed answer to defendants' appeal.
On September 14, 1927 Robert W. and Z. Amos Richardson acquired from Isaac McMills, among other lands, "that part of the Southeast Quarter of Northeast Quarter, North of Flat Bayou, . . . All in Section 35 Township Seven North Range Four West . . ." In the year following, the Richardsons constructed a fence so as to enclose the land acquired from McMills with that previously owned by them and situated west thereof. Survey plats filed in evidence establish that the fence was erected upon the south line of the Richardson estate until it reached the northwest corner of Southeast Quarter of Northeast Quarter of Section 35 at which point the fence ran southeasterly to a point where it intersected the north line of the property in dispute, thence ran easterly to the section line between Sections 35 and 36, which section line formed the east boundary line of the Richardson estate. The fence so constructed was maintained in place until the year 1970 at which time plaintiff-defendant in reconvention (hereafter referred to as Vallee) having presumably acquired the balance of SE/4 of NE/4 Section 35 T. 7 N., R. 4 W. replaced the old fence with a new fence erected *203 upon the same line followed by the 1928 Richardson fence.
In the fall of 1971, defendants-plaintiffs in reconvention, successors in title of Robert W. and Z. Amos Richardson (hereafter referred to as Richardson) removed the Vallee fence and erected a new fence south enclosing the property in dispute with the Richardson lands to the north. Upon this happening Vallee filed the instant suit.
The trial court determined and we believe correctly so that Richardson, by asserting title to the disputed tract, converted this possessory action into a petitory action and judicially confessed the possession of Vallee. (LSA-C.C.P. Article 3657). Having done so Richardson has the burden of proof to "make out his title thereto" (LSA-C.C.P. Article 3653). The burden which rests upon one asserting title to immovable property against one in possession is to prove a valid record title good against the world without regard to the title of the party in possession. Deselle v. Bonnette, 251 So.2d 68, writ refused Oct. 18, 1971 (3rd Cir. La.App.1971); and, Pure Oil Company v. Skinner, 294 So.2d 797 (S.Ct.La.1974).
The trial court held that although Richardson established a valid record title to all of SE/4 of NE/4 Section 35 T. 7 N., R. 4 W., north of Flat Bayou that they failed to establish by a preponderance of the evidence that the disputed 20.75 acre tract was included within this description. We find that Richardson's burden to "make out his title" necessarily included the burden to establish that the tract in dispute was in fact located north of Flat Bayou. Stated another way Richardson's burden in making out his title included the burden of establishing the location of Flat Bayou as it existed on September 14, 1927. Richardson contends that said Bayou in the year 1927 was located along the south line of the land in dispute. On the other hand, plaintiff contends that said Bayou in the year 1927 was located just south of and adjoining the fence constructed by Richardson across this quarter-quarter section in the year 1928. This determination is essentially a question of fact. The trial judge in his written reasons for judgment analyzed all of the evidence and set forth in detail his conclusions in regard thereto as follows:
"Plaintiff strongly contends that Amos Richardson left a "Texas gap" in the fence he erected at the Northeast Corner of the disputed tract. I am satisfied that a preponderance of the evidence establishes there was no gap. In reaching that conclusion, I accept the testimony of Mr. Clarence Spottsville, who has lived in the immediate vicinity of the land in dispute 72 years, owned land there for many years and leased the land now owned by Vallee for ten years. Additionally, I accept the testimony of Mr. Lynwood Vallee and Mr. Jesse McBride that there was no gap in the fence in 1970. I further find that Amos Richardson did not cut timber upon the disputed tract or exercise any other acts of ownership thereon from his acquisition in 1927 until his death except the excavation of a ditch in 1964. Plaintiffs in reconvention testified about timber being cut under direction of Amos Richardson but their testimony reveals that they did not go south of the Amos Richardson fence and have no personal knowledge of cutting south of the fence. Mr. Thomas testified that he, in behalf of Vallee's vendors, sold the timber south of the fence.
William McMills, grandson of Isaac McMills, testified that he assisted in a survey of the McMills land by cutting brush and pulling a chain. In describing that survey, he stated "we ran over to the middle of Flat Bayou, from that point, we started due north right up the middle of Flat Bayou, run about a forty." Later Mr. McMills testified that Flat Bayou ran east and west. Mr. McMills also testified that the Richardson land was in cultivation at the point the survey crew hit the Amos Richardson fence. The other testimony and evidence *204 herein establishes, without question, that the Richardson land north of the disputed tract was low, marshy land covered with hardwood timber, uncleared and uncultivated.
In addition to the above testimony, I note from his testimony that he would have been only 12 or 13 years old when the survey was made. Additionally, he testified that the heirs of Isaac McMills conveyed 114 acres to Amos Richardson, including the land north of Flat Bayou, whereas Exhibit P-IV reveals the sale was made by Isaac McMills.
Mr. Barrett Gremillion, a registered surveyor, made a topographic survey of the disputed tract on October 1, 1973. His findings are reflected on Exhibit P-13. The Court, at the request of all counsel herein, inspected the area after this trial. From the evidence adduced at the trial and my personal view of the scene, Exhibit P-13, made in October, 1973, after the land was cleared and moulded for drainage and cultivation by Mr. Vallee, and after extensive drainage excavation by Mr. Richardson in 1964, bears no resemblance to the topography of the land in 1927. Additionally, Mr. Gremillion testified that the "depression" along the southline of the disputed tract had not been dredged or cleared out and looked natural and he described it as a bayou. The testimony of Mr. Goss, Mr. Beason, and Mr. Bush, as well as the physical appearance of the area as observed by me, refute his testimony.
Mr. Gremillion was of the opinion that Flat Bayou lies along the south line of the disputed area, which was initially designated to him as Flat Bayou by a Mr. Craig, who did not testify. In forming that opinion, he used two topographic maps issued by the United States Geological Survey and are in evidence as Exhibits P-X and P-XI. His conclusion depends upon the vertical and horizontal accuracy of those exhibits. A pamphlet entitled "Topographic Maps", also issued by the United States Geological Survey, in evidence as Exhibit P-XII, states that national standards for vertical and horizontal accuracy were not adopted until 1941 and that maps that meet those standards carry a statement to that effect in the lower margin. Exhibit P-X was published before any standards were adopted and Exhibit P-XI does not bear the notation mentioned and they are not shown to possess the accuracy attributed to them by Mr. Gremillion.
Mr. Charles Beason, a registered surveyor, who made an extensive tour of the area, frankly admitted that he did not know where Flat Bayou was located. He began his original survey at the Northeast corner of the 20.75 acres at the Amos Richardson fence, assuming "this was where someone had at one time taken the bayou to be." His second survey originated at the Southeast Corner at the "dug ditch" that a Mr. Craig, who did not testify, pointed out to him as Flat Bayou.
Jesse Goss, employed by the Soil Conservation Department, testified from notes made by Woodrow Sheppard who was not called as a witness. Mr. Goss assisted in the drainage project for the Richardson lands in 1964 and used Exhibits P-18 and P-19 in his testimony. Those exhibits are aerial photographs and there is no evidence establishing Mr. Goss as an expert in that field or in the identifying the exhibits as photographs of the land involved. The aerial photographs are identified only by Mr. Goss and their introduction into evidence was subject to Vallee's objection to the lack of predicate. The objection is sustained. In his testimony Mr. Goss referred to the area along the south line only as a "slough". He did not testify as to the location of Flat Bayou.
Mrs. Melba Thomas was a former owner of the land conveyed by her and her brother to Vallee. She and her husband, Maurice Thomas, were not familiar with the land and did not know the location of Flat Bayou.
*205 Mr. Robert Bush, who worked for Amos Richardson, testified that Flat Bayou was located 150 feet south of the Amos Richardson fence. Mr. Henry Bush, who lived in the vicinity of the Richardson and McMills lands testified there were two bayous, Flat Bayou and Mills Bayou, located in the area and did not testify as to the location of Flat Bayou.
Mr. P. J. Redmond worked for Amos Richardson from 1923 until 1946. In 1928 or 1929, he assisted with the building of the fence that has been herein referred to as the Amos Richardson fence. He testified that Amos Richardson blazed the line for the fence, that Flat Bayou was 400 to 500 yards south of the fence, that Mr. Richardson claimed ownership of the land between the fence and Flat Bayou but that he did not know anything about the ownership of that strip of land. He also testified that Mr. Richardson did not have any cattle south of the fence, that cattle owned by Dowden grazed south of the fense, that in the winter the bayou did not go up to the Amos Richardson fence "but the water do", and that in the fall, winter and spring "it was all water".
Mr. Claude Orr, who was reared on the Richardson and McMills places, testified that the Amos Richardson fence was a "good 300 feet" north of Flat Bayou and the line between the Richardson and McMills lands was 30 to 40 feet north of the bayou. Mr. Orr admitted that after Amos Richardson erected his fence, McMills farmed the land between the bayou and the fence and grazed cattle thereupon, that Dowden bought the McMills lands and also grazed cattle to the fence.
Mr. John Richardson, Mrs. Craig and Ms. Barbara Richardson had little knowledge of the land in dispute prior to 1970. Their testimony as to a logging road running through a gap in the Amos Richardson fence to the tract in question is refuted by other witnesses. At the time of the Court's visit, no tracks were visible south of the north line of the 20.75 acres, and, while a few ruts were seen north of the north line, logs, brush and other debris had been recently moved back and branches and limbs were freshly clipped to give the appearance of a road. As the scene had been tampered with immediately prior to my visit, I was unable to determine if there was any evidence of an old logging road north of the disputed area.
Mr. Clarence Spottsville testified that he and Mr. Dowden ran cows on the disputed area, that he knew of "what you say a slough" in the area and that "you have low places all over." He further testified that he leased the Dowden place and McMills place for 10 years around 1957 from "fence to fence" and that he never knew of any Flat Bayou in the area.
Mr. Lynwood Vallee testified that he discussed the building of a new fence with Mr. Amos Richardson and Mr. Richardson did not indicate that he owned or claimed any land south of the old fence. Ms. Barbara Richardson testified that she was present during that meeting and that Mr. Richardson told Mr. Vallee he owned land south of the fence.
I conclude from all the evidence that plaintiffs in reconvention have failed to discharge the burden of proof imposed upon them of making out their title to the disputed tract of land and establishing by a preponderance of the evidence that the description "all of the Southeast Quarter of Northeast Quarter north of Flat Bayou" included the 20.75 acres."
In the recent case of Canter v. Koehring, 283 So.2d 716 (La.1973) the Louisiana Supreme Court clearly defined the principle of appellate review of facts to be as follows:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions *206 of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also on the proper allocation of trial and appellate functions between the respective courts."
Our review of the record in this case reveals that the trial court's judgment meets the standard of reasonableness set forth in the Canter case.
Plaintiff urges in brief that the trial court judgment be amended so as to award him damages. As previously set forth plaintiff has neither appealed nor answered the appeal of defendants and therefore the trial court judgment which rejected Vallee's demand in damages must remain undisturbed.
For the foregoing reasons, the judgment appealed from is affirmed at the appellants' costs.
AFFIRMED.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
This case presents a peculiar fact situation since defendants have record title to:
". . . the Southeast Quarter of Northeast Quarter (Section 35, Township 7 North, Range 4 West) North of Flat Bayou." (TR. 173).
The question is not their title to the property but whether the 20.75 acres in dispute are included within the description. Properly this is an action to fix boundaries under LSA-C.C.P. art. 3691 because:
". . . the bounds which have been formerly fixed are no longer to be seen, . . ." Flat Bayou was a fixed and visible boundary in 1927. It can be seen on two topographic maps, which were mapped, edited and published by the United States Department of the Interior Geological Survey on the basis of surveys in 1933-1934. (P-X and P-XI). Clearly, the water course of Flat Bayou has experienced a change; it is no longer visible. See LSA-C.C. arts. 823, 828. However, this should not operate to change the ownership of the land.
"Parties who buy on the faith of the public records showing the limits of their estates as fixed by courses and distances are entitled to keep what is there shown to be in the estate purchased by them." Ledoux v. Waterbury, 292 So.2d 485 at 487 (La.1974).
When the question is whether an area in dispute between adjoining landowners is included within a record title, the fact that the suit is named a petitory or possessory action rather than a boundary action does not prevent the suit from being an action in boundary. Poirier v. T. L. James & Co., 163 So.2d 171 (La.App. 4 Cir.1964). When the purpose is to locate a certain line, a boundary action rather than a petitory action will lie. Derouen v. Poirier, 163 So.2d 131 (La.App. 3 Cir.1961). This action is correctly denominated an action in boundary. It is important that the real nature of the action be recognized, as set forth in Russell v. Producers' Oil Co., 143 La. 215, 78 So. 473 (1918):
"It is important that the character of the present action be definitely ascertained and fixed in order to place the burden of proof where it properly belongs. In a petitory action, that burden is upon plaintiff who can recover only on the strength of his own title, and not upon the weakness of his adversary's. In an action in boundary, the law requires proof from each of the contiguous owners, and the burden is divided. In a petitory action, the court will either nonsuit plaintiff or dismiss his demand if he fails to prove his ownership by a preponderance of evidence, while in a boundary *207 suit the court may, when not satisfied either from the lack of evidence or the weakness of its probative force, cause, ex proprio motu an investigation by experts in order to ascertain the facts necessary to reach an intelligent conclusion and to render a proper decree." 78 So. 475.
Here, the trial court and the majority err in the burden of proof required of the Richardsons, defendants and plaintiffs-inreconvention. The action is properly one in boundary and should have been treated as such. LSA-C.C.P. art. 3693. See McCartney v. Stafford, 307 So.2d 782 (La. App. 3 Cir.1975) where a petitory action which actually turned on a question of boundary was reversed and remanded for consolidation with a pending boundary action in order to do substantial justice to the parties. Almost exactly the same situation is presented here, but there is a contrary disposition by the same court. The result reached by the trial court and the majority relies on technical rules of pleading to divest the Richardsons of hereditary land.
I respectfully dissent.
NOTES
[1] The property in dispute is erroneously described in plaintiff's petition and in the trial court judgment as being situated in NW/4 Section 35, T. 7 N., R. 4 W., but is otherwise correctly described by reference to a survey thereof by L. J. Daigre.