487 So.2d 446 (1986)
Marion H. GAUDET
v.
CITY OF KENNER and the State of Louisiana Through the Department of Natural Resources.
No. 85-CA-460.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1986.
Rehearing Denied May 16, 1986.
Michael J. Power, River Ridge, for defendants-appellants.
Before BOWES, CURRAULT, and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal relates to a petitory action. From a judgment recognizing the plaintiffappellee's ownership of certain immovable property, the City of Kenner appeals. We amend and, as amended, affirm.
FACTS
Contested is ownership of a parcel of land fronting on Lake Pontchartrain near the end of Williams Boulevard in Kenner, Louisiana. The tract sits pretty much in the middle of a larger area being developed by the City of Kenner as a recreation/boatlaunch facility. Kenner claims the entire area via lease from the State.
The plaintiff, Mr. Marion H. Gaudet, acquired title by a credit sale from Ms. Altheia Gaudet Margavio, his sister, on June 27, 1980. The sister had acquired title via tax sale patent (No. 19851) from the State in 1966. Mr. Gaudet first learned of the planned marina from a newspaper article.
*447 At trial, Mr. Gaudet related that prior to March 12, 1981 (the date Kenner leased the marina area from the State), Kenner trucks were dumping fill in the area of the property he currently claims. Mr. Ralph A. Beaumont, Sr., who once drove such Kenner dump trucks, estimated that fill was being dumped in the area as early as 1973 or 1974.
Mr. Gaudet is emphatic that, as of 1980, dry land existed all the way to a concrete bulkhead some distance from the protective levee. Moreover, he testified that even prior to 1980 he had been to the levee at Williams Boulevard and that on all such occasions dry land had extended to the bulkhead. Nor does he know of Kenner's ever placing fill on his particular parcel to convert it to dry land.
A neighbor of Gaudet, Mr. Raymond H. Delaune, purchased the tract immediately to the east of the disputed tract in 1946. Before purchasing, he walked out his property boundaries and has continually walked them since. In the early 1970's Delaune recalls walking on dry land all the way to the concrete bulkhead. Generally, he recalls no time at which his neighbor's tract was submerged.
A friend of Mr. Gaudet, Mr. Melvin Gorbach, purchased a home in Kenner in 1959. He testifies that at that time he took his family to the beach at Williams Boulevard and that there was in fact land there. He lives about four miles from the lakefront and "was continuously going fishing" there since 1959.
On the other hand, Mr. Ralph A. Beaumont, Sr., present Supervisor for Parkways for the City of Kenner and former dump truck driver for it, testified he delivered various fill and broken concrete to the area in question. He says about 10 to 20 feet of water separated the shore from a concrete breakwater. He says a concrete boatlaunch once tapered into the water there. Upon surveying a map depicting the present land, Mr. Beaumont said that the tract was not in existence at the time of his fill operations, which began in 1973 or 1974.
Mr. Frank P. Fontcuberta, Jr., defendant's land surveyor, presented a composite map showing the Lake Pontchartrain shoreline on various dates, beginning with 1932. It shows the plaintiff's land as almost wholly submerged in 1956, not to reappear until, in part, 1981. The map and testimony are based on various maps, some from the United States Army Corps of Engineers and some from private surveys. Not all maps were of the same scale. To achieve a single scale, Fontcuberta adjusted paper copies by referring to various landmarks. He had no way of knowing how the primary maps ascertained the shoreline. Nor can he vouch for the accuracy of the source maps.
Recalled, Mr. Delaune testified that in 1964 the shoreline was not so eroded as Fontcuberta depicted it but that, instead, there was land to walk on beyond his supposed shoreline, apparently about 150 feet of it.
Mr. Richard Dading, plaintiff's expert surveyor, reviewed various property descriptions of the disputed tract and concluded that all coincided. Moreover, he stated that based on his research of surveys, aerial maps, and other documents, he saw nothing to indicate that Gaudet's land had not existed at any time since 1947.
ISSUES
We are called upon to determine whether the trial court erred in its determination of ownership, which presents, analytically, two issues:
(1) whether, where the plaintiff in a petitory action establishes record title to a tract presently adjoining Lake Pontchartrain, he also must affirmatively show that at no pertinent time has such tract been inundated by Lake Pontchartrain so as to revest its ownership in the State or to prevent its transfer by patent from the State; and
(2) whether, in light of the foregoing, the plaintiff has met his burden of proving ownership of the tract.
Additionally, we are asked to determine whether the trial court erred in failing to *448 include in its judgment a description of the adjudicated tract.
ANALYSIS
Under Louisiana Code of Civil Procedure article 3653, given a defendant in possession, as Kenner apparently is, the plaintiff must prove that he has acquired from a previous owner or by acquisitive prescription. That is, the plaintiff must show "`valid record title'", "`title good against the world without regard to the title of the party in possession.'" Green v. Cenac, 336 So.2d 349, 351 (La.App. 1st Cir.1976), quoting Pure Oil Co. v. Skinner, 294 So.2d 797, 798 (La.1974). Other cases express this burden alternatively as an "apparently valid title" good against the world. Crown Zellerbach Corp. v. Heck, 407 So.2d 770, 772 (La.App. 1st Cir.1981); Simmons v. Jones, 68 So.2d 663, 665 (La. App. 2d Cir.1953). We appreciate these pronouncements to mean that the plaintiff must produce a prima facie complete chain of title before the defendant in possession must go forward with any proof.
The precise nature of the plaintiff's initial burden becomes important because the defendant counters the plaintiff's claims not with proof of any title defect (per se) but with claims that other legal principles are operative. That is, the City of Kenner does not contest the fact that the plaintiff acquired title from a previous owner but instead claims the tract of land in question has remained State property because, notwithstanding the 1966 patent, no nonsubmerged land was then present to transfer. Alternatively, if the tract existed as dry land at the time of the 1966 patent but subsequent thereto submersion occurred, title would have revested in the State.
The waterbottom of a navigable lake or arm of the sea is reserved by the language of the patent and is, moreover, nontransferable for the reasons exhaustively explored on rehearing in Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 (La. 1974, reh'g 1975). See also La. Const. of 1974 art. IX, § 2 and La. C.C. art. 450 and the comments thereunder. In addition, if the tract existed as dry land at the time of the 1966 patent, any subsequent submersion would serve to revest title to it, or parts of it, in the State. Once lost, lake bed remains State property until otherwise alienated; it does not vest in a private riparian owner should it reappear. La. C.C. arts. 499-500; State v. Placid Oil Co., 300 So.2d 154 (La.1973), cert. denied 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975), reh'g denied 420 U.S. 956, 95 S.Ct. 1343, 43 L.Ed.2d 434 (1975); Miama Corp. v. State, 186 La. 784, 173 So.2d 315 (1936), cert. denied 302 U.S. 700, 58 S.Ct. 19, 82 L.Ed. 541 (1937); Zeller v. Southern Yacht Club, 34 La.Ann. 837 (La.1882).
Given these two sets of legal principles, the question arises whether the petitory plaintiff, in making out his "record title," must affirmatively exclude the operation of the above principles vesting the State with ownership of navigable waterbottoms. We think not. First, such an interpretation gives meaning to the jurisprudential requirement of proof of record titlethe plaintiff should not also have to prove the absence of nonrecord events impacting his title. Second, the petitory plaintiff often faces a formidable task anyhow. There is no good reason to add to the burden. Third, the State under waterbottoms principles is vested with ownership via something that looks like instantaneous prescription; such operation of law is best governed by something like prescriptive principles, with the burden being on the defendant asserting its operation to raise and prove its applicability. Fourth, as a matter of pragmatics it is probably much easier for the defendant to prove something has once occurred than for the plaintiff to show it never has. Thus, once the plaintiff established an apparently valid record title to the disputed tract, it became Kenner's burden to show that this title was rendered of no effect by the operation of waterbottoms principles.[1]
*449 Given that it was encumbent on the plaintiff only to prove record title in order to make out his case, the trial decision must stand. A careful reading of the record reveals that the City of Kenner presented only one firsthand witness who was unclear as to the specific dates and exact locations. Kenner attempted to corroborate this testimony by presenting a map based on such sundry data that we find it virtually impossible to assess its incremental accuracy. On the other hand, the plaintiff presented three firsthand witnesses who stated that land existed beyond the protection levee where the plaintiff's claimed parcel now exists. While these witnesses were clearest on post-1980 events, they also asserted land had existed there for some time before, albeit they were vague on how much land had been there for how long.
Viewing these record facts in light of the respective burdens enunciated, two conclusions become ineluctable: (1) that the plaintiff established an apparently valid record title to the disputed tract and (2) that the City of Kenner failed in its burden of showing that this title was rendered of no effect by the operation of waterbottoms principles. Accordingly, we find the trial court had a reasonable, factual basis for its factual conclusions and that such conclusions are not "clearly wrong."
As to the final issue, we note that even though the judgment of the trial court recognized Mr. Gaudet as the owner of the immovable property, it failed to include in its judgment the property description, which is contrary to the mandate of article 2089 of the Louisiana Code of Civil Procedure. Therefore, in accordance with La. C.C.P. art. 2164, we amend the trial court's judgment by incorporating the following property description:
A certain portion of ground situated in the Parish of Jefferson, La., in the Town of Kenner said portion of ground is designated as being a portion of Plot "A" in Section 37 and 42, Township 12 South Range 9 East, measuring 40 ft. front on the New Orleans Hammond Highway by a depth to Lake Pontchartrain. Adjudicated to the State in the name of Dr. H. S. Smith for the unpaid taxes of 1943....
CONCLUSION
For the reasons assigned, the judgment of the trial court is amended to incorporate the heretofore described property description and, as amended, is affirmed. All costs of this appeal are to be assessed against the appellants.
AMENDED AND AFFIRMED.
NOTES
[1] We are aware of only two cases treating analogous burden of proof problems: Stevens v. Mayo, 166 So.2d 572 (La.App. 4th Cir.1964) and Vallee v. Richardson, 331 So.2d 201 (La.App. 3d Cir.1976). Of these, Stevens is readily distinguishable because the plaintiff therein had no record title. While Vallee is not so readily distinguishable, we note the perspicacity of Judge Watson's dissent and rest our opinion on our own reasoning.